**James Douglas YAGER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 681S169.**

Supreme Court of Indiana.

July 14, 1982.

Rehearing Denied Sept. 13, 1982.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was originally charged on a two-count indictment. Count I was for Theft, and under Count II the State sought enhancement of any sentence imposed upon a finding that appellant was an habitual offender. The indictment was later amended to add two counts for forgery. A jury found appellant guilty on all four counts. He was sentenced to terms of imprisonment

of two years on the theft count, five years on each of the forgery counts, and the sentence was enhanced with the thirty year term provided for in the habitual offender statute.

■ The judge in this case made the same technical error we have seen reoccurring in several cases recently, in that he treated the habitual criminal charge as a separate charge and sentenced for thirty years for that charge. As we have previously stated, one convicted of a crime and found to be an habitual criminal is not sentenced separately for being an habitual criminal. Under the statute the defendant receives an additional thirty years for the instant crime because he has been found to be an habitual criminal.

■ It is imperative to understand the difference. If the status of being an habitual criminal were to be considered a separate crime, conviction would be unconstitutional as double jeopardy. When status permits enhancement of the penalty for the instant crime no such impairment exists. To punish for the status of habitual criminal would also violate the Eighth Amendment of the United States Constitution. *Funk v. State*, (1981) Ind., 427 N.E.2d 1081. The trial court therefore erred in assessing a separate sentence of thirty years as an habitual criminal. The thirty years provided by the statute should be an enhancement of one of the instant felonies.

In the case at bar it would be perfectly proper for the judge to give a two year sentence for Theft under Count I; a five year sentence for Forgery under Count II; and under Count III to give a five year sentence for Forgery to be enhanced by thirty years by reason of the habitual criminal finding. Therefore the total penalty assessed for the Forgery under Count III would be thirty-five years.

This cause is remanded to the trial court for such correction. The trial court will in all other things be affirmed.

In the case at bar, appellant represented himself as he did in all preliminary proceedings. At the trial he declined to participate in the proceedings. The record shows the following facts. On July 30, 1979, a man identifying himself as "James H. Brown" opened a business checking account at the main office of the National City Bank of Evansville for a new business he claimed to be starting, "Brown's Towing and Auto Service." Evidence introduced later showed appellant was the man who identified himself as "James H. Brown." The next day a man, identified by tellers handling the transactions as appellant, made several deposits at various branches of National City Bank. In each case he deposited part of a check made out to Brown's Towing and Auto Service to the newly opened account and took the balance of the check in cash. These checks were drawn on either the account of "Labor Source" of Nashville, Tennessee, held with the Commerce Union Bank of that city, or "Nelson's Car Wash" of Scottsburg, Indiana, held with the National Bank of Scottsburg. It was found both these accounts had been closed with the respective banks some time before the new account for Brown's Towing and Auto Service was opened. Appellant was subsequently arrested in Fort Smith, Arkansas, where he was trying to pass a check drawn on the Nelson's Car Wash account. He had other checks from Nelson's and from Labor Source in his possession. In connection with the offenses committed in Evansville appellant was charged and convicted as recited above.

■ Appellant argues the enhancement of his sentence under the habitual offender statute, I.C. 35–50–2–8 [Burns 1979 Repl.] should be vacated because the statute is unconstitutional. He claims the statute is unconstitutional on three separate grounds.

First he claims the statute is an *ex post facto* law. We dealt with this same contention in *Funk, supra.* Next he claims the habitual offender statute is unconstitutional because it deprives him of a fair trial by requiring him to be tried on the habitual count before the same jury that heard the evidence on the substantive offense. This argument was rejected in *Jameison v. State*, (1978) 268 Ind. 599, 377 N.E.2d 404.

Appellant also claims the habitual offender statute is unconstitutional because the prosecutor may arbitrarily enforce the statute by determining without adequate guidelines whom to prosecute under the statute. We have considered and rejected this argument as well. *See, Funk, supra; Eaton v. State*, (1980) Ind., 408 N.E.2d 1281.

Appellant claims the trial court erred in overruling his "Motion for Court Order for Legal Supplies" and his "Motion for Court Appointed Private Investigator." Appellant claims denial of these motions was error because he had exercised his constitutional right to proceed *pro se*, because he was incarcerated he obviously could not investigate the allegations of the state himself, and because he was indigent he could not pay for these supplies or services. He cites *Roberts v. State*, (1978) 268 Ind. 127, 373 N.E.2d 1103, in support of his argument.

In *Roberts, supra*, the defendant claimed as error the trial court's denial of his oral motion for the services of a private investigator. We held such denial was not error. We observed, "[T]here is not a constitutional mandate, under the due process clause, that one accused of a crime be entitled at public expense to any type of expert whose help in a particular case might be relevant." *Id.* at 129, 373 N.E.2d at 1105. We went on to note the only constitutional fair trial requirement relative to such services is in regard to appointment of a psychiatrist when an insanity defense is offered. We continued:

"[T]here are no further constitutional requirements for the appointment of experts. The trial judge may appoint further experts, of course, but such appointments would be within his sound discretion. No such abuse of discretion is shown in the denial of this appellant's motions, especially since the requests were made for services which could have been performed by appellant's counsel." *Id.* at 130, 373 N.E.2d at 1105.

■ First we note those cases cited by appellant in support of this proposition are inapposite because at the stage of the proceedings at which the motions were made this appellant's indigency was not established. In fact, on March 28, 1980, appellant was arraigned and the trial court offered to have counsel appointed for him. Appellant declined this offer and stated if he felt he needed counsel he would retain private counsel. As late as December of 1980, he was still talking about retaining private counsel and was not claiming he couldn't afford to do so. These facts belie any notion appellant was indigent at the time he made the motions.

■ Moreover, we note it was appellant's choice to represent himself. We have stated: "[O]f course, a defendant may represent himself if he so desires. In such situation he must accept the burdens and hazards incident to his position." *Blanton v. State*, (1951) 229 Ind. 701, 703, 98 N.E.2d 186, 187. *See also, Franklin v. State*, (1955) 234 Ind. 418, 126 N.E.2d 768. One of the "burdens and hazards" appellant took on by rejecting the offer to have counsel appointed for him was that of doing without the supplies and services an appointed attorney could have provided for him. We will not hear him now complain of these burdens and hazards he could have easily avoided.

Appellant claims the trial court erred in not granting his Motion for Change of Venue, filed May 29, 1980. Appellant attached to the motion an article printed in a May 16, 1980, edition of an Evansville newspaper regarding his prior criminal activity and his self-representation in the instant case. The record shows at a hearing held May 29, 1980, the court indicated the motion would be taken under advisement, to be ruled upon during or after jury selection. We can find no evidence in the record the motion was ever ruled upon.

■■ This error is not the proper subject for our review. No error can be claimed in the appellate court on the subject matter of a motion never ruled upon by the trial court. *Jaudon v. State*, (1970) 255 Ind. 114, 262 N.E.2d 851.

■ In a related assignment of error appellant claims the trial court erred in not

properly questioning the jurors on *voir dire* (conducted by the court) as to any possible prejudice they might harbor toward appellant because of media reports on the case. Appellant cites no authority for the proposition the court was required to make this specific inquiry on *voir dire*. Therefore his argument on this issue may be deemed waived under Ind.R.App.P. 8.3(A)(7). Additionally, the record shows no objection was made to any alleged deficiencies in the trial court's *voir dire* of the jury with respect to the question of pre-trial publicity. Accordingly, assuming *arguendo* the court was obliged to make such inquiry, any error in not doing so is waived for failure to object. *Packwood v. State*, (1963) 244 Ind. 585, 193 N.E.2d 494.

Appellant claims the trial court erred in denying two motions for continuances. Trial had been set for January 12, 1981. The first motion for a continuance was filed January 5, in which the reason stated for seeking a continuance was unavailability of appellant's only witness in the case, due to impending surgery on that witness. The witness was a staff psychiatrist of a Kentucky hospital. This motion was denied the next day. On January 7, appellant filed an "Emergency Verified Motion and Affidavit for Continuance," which the court took under advisement until the affidavit verifying the inability of the witness to attend the proceedings was received. The affidavit arrived after trial had commenced on the first day. The court had already denied the motion before the *voir dire* of the jury began that morning. Appellant contends both motions were erroneously denied because there was "substantial compliance" with the statute governing continuance.

The granting of continuances on account of the absence of evidence is governed by I.C. 35–1–26–1 [Burns 1979 Repl.]. In pertinent part the statute reads:

"*Motion and affidavit of defendant.*—A motion by the defendant to postpone the trial on account of the absence of evidence can be made only on affidavit showing materiality of the evidence expected to be obtained, and that due dili-gence has been used to obtain it, and where the evidence may be; and if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time. The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant, nor by others at his request, nor within his knowledge or consent, and what facts he believes the witness will testify to, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured .... The defendant shall file such affidavit for continuance at least five [5] days before the date set for trial or shall sustain the burden of establishing to the satisfaction of the court, that the defendant is not at fault for failing to file such affidavit for continuance at an earlier date. If the motion is based upon the illness of the defendant or of a witness, the motion shall be accompanied by oral testimony, in open court, or by the written statement of a physician or hospital official having the care or custody of such defendant or witness, presenting the nature of the illness and the probable duration of his incapacity to attend trial. Such written statement of the physician or hospital official shall be sworn to by such physician or hospital official before a notary public or other officer authorized to administer an oath ...." *Id.*

The first motion for a continuance was properly denied by the trial court because it failed to comply with the requirements of the statute set out above. Most important there was no affidavit accompanying the motion to properly establish the unavailability of the witness; thus denial of the motion was proper.

With regard to the second motion, appellant cites *DeVaney v. State*, (1972) 259 Ind. 483, 288 N.E.2d 732, in support of his assertion that since there was substantial compliance with the statute, denial of that motion

was reversible error. In that case the State made the motion, unaccompanied by affidavit, and the court granted the motion pending receipt of a proper affidavit. The affidavit was supplied by the date set for trial, and the appellant's objections to the procedure were held non-meritorious because "[t]here was substantial compliance with the trial rule." *Id.* at 489, 288 N.E.2d at 736.

In the case at bar, we first note at the hearing on appellant's second motion the trial judge did not set a deadline for receipt of the affidavit; rather he said, "I'll take it under advisement. Let's wait for the affidavit on it." The affidavit was not produced until the morning of the first day of the trial, by which time the judge had already ruled adversely to appellant on the motion. Appellant apparently reads *DeVaney, supra,* to stand for the proposition that once the judge had said he would wait to rule on the motion until the affidavit arrived he was obligated to do so and his ruling here is thus reversible error.

■ Appellant, however, ignores an important distinction between this case and *DeVaney, supra.* In that case the affidavit finally supplied to the court complied with the statute. In the case at bar the affidavit supplied was materially deficient in several respects. First, the affidavit does not show the probability of procuring the absent witness's testimony within a reasonable time. The affiant is the absent witness's supervisor at his place of employment. The affidavit merely states, in the opinion of the affiant, "[I]t would be unwise for him to travel to Indiana at this time." Second, the statute requires if the affidavit asserts the witness is unavailable due to illness, "the motion shall be accompanied by the oral testimony, in open court, or by the written statement of a physician or hospital official having the care or custody of such ... witness, presenting the nature of the illness and the probable duration of his incapacity to attend trial." I.C. 35–1–26–1 [Burns 1979 Repl.]. In the case at bar affiant happened to be a physician who was chief of staff at the hospital at which the witness was employed. It is apparent from the language in the statute the physician attesting to the witness's incapacity must be a physician treating the witness, not just any physician. In the case at bar the affidavit does not show the affiant was a physician treating the witness; hence, it is defective in that respect as well. Third, the affidavit fails to comply with the statute in that it fails to establish the length of time for which the witness will be unable to attend the trial.

■ Thus *DeVaney, supra,* is not supportive of appellant's position, as there is no "substantial compliance" with the statute. A ruling on a motion for a continuance not within the statute is discretionary and is reversible error only where that discretion is abused. *Royal v. State,* (1979) Ind., 396 N.E.2d 390. We see no such abuse here where the failure to comply with the statute has been so patent.

■ We also note appellant at various proceedings leading up to trial testified this witness would provide an alibi defense for him. On December 19, 1980, he acknowledged his awareness of the requirement that notice of an alibi defense had to be filed within a certain time period; yet by the time of the trial he still had not done so. We do not believe the trial court can be said to have abused its discretion in denying a continuance sought to procure the testimony of an absent alibi witness, when at the same time there has been a complete failure to comply with the requirements of the alibi statute. The trial court did not err in refusing to grant the continuance.

Appellant also assigns as error the trial court's denial of his "Verified Motion and Declaration of Prejudice," which he filed along with his motion for a continuance on January 7, 1981. In this motion appellant sought a "change of venue ... [and] any and all further different relief [which is proper] ...," which appellant alleged he was entitled to by virtue of the fact the trial judge had refused to change the trial date back to January 14, 1981, a date on which the attorney appellant claimed to now be considering retaining would be available.

Appellant had first testified he would be employing private counsel at a December 19, 1980, hearing. On December 23 at another hearing he acknowledged his awareness that this counsel had still not entered an appearance for him. It was at this time he first asserted this attorney would not be able to attend a January 12, 1981, trial. By the time of the hearing on the January 7, 1981, motions the attorney had still not entered an appearance for appellant. The motion was denied at the close of the hearing.

In his brief appellant treats this issue as though it were a denial of a request for a continuance. The State also treats this question as a motion for a continuance. Since appellant has chosen to treat this as a continuance in his brief before this Court, we will address his contentions in that regard.

█ It is within the sound discretion of the trial court to determine whether to grant a continuance based on a non-statutory ground, and the decision to deny the continuance is reversible error only for abuse of discretion. *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289; *Whitacre v. State*, (1980) Ind., 412 N.E.2d 1202; *Johnson v. State*, (1979) Ind., 390 N.E.2d 1005. By January 8, 1981, the attorney appellant had indicated he wished to employ still had not entered his appearance. This state of facts strongly suggests appellant actually had no plans to retain private counsel and that this was merely a delaying tactic on his part.

█ Additionally, since March 28, 1980, appellant had repeatedly manifested his desire to represent himself and indicated that he considered himself competent to do so. Then eight months later, and just three weeks before trial, he indicated a change in this position. Finally, just five days before trial he sought a continuance but still could not offer any proof that the entry of appearance by private counsel had been accomplished. The right to be represented by counsel of one's choosing "can only embrace a reasonable opportunity to obtain such representation." *Works v. State*, (1977) 266 Ind. 250, 256, 362 N.E.2d 144, 147. Here we do not find appellant was denied a reasonable opportunity to obtain private counsel, when he waited until five days before trial to exercise the right and had for eight months prior unequivocally waived the right. Given the circumstances, we do not see any abuse of discretion in the denial of the motion for a continuance on the grounds such denial deprived appellant of his right to representation.

Appellant claims the trial court erred in failing to declare a mistrial or at least admonish the jury to disregard what they had seen. Almost immediately after the judge began to *voir dire* the jury, appellant was involved in a physical struggle with court personnel. Appellant stated he did not wish to be present during the proceedings and of his own volition tried to walk out of the courtroom. He was physically restrained from doing so, but then the trial judge acceded to his wishes and allowed him to return to the jail for the remainder of the trial.

█ The granting of a mistrial lies within the sound discretion of the trial court. Reversible error is shown only where the defendant is placed in a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) Ind., 419 N.E.2d 964; *Royston v. State*, (1979) Ind., 397 N.E.2d 285; *Thompkins v. State*, (1978) Ind., 383 N.E.2d 347. Whether or not the defendant has been placed in a position of grave peril is determined by the probable persuasive effect of the alleged misconduct on the jury's decision. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

█ In the case at bar we fail to see how the event viewed by the jury could have had any effect on their decision. We are not persuaded there are "reasonable grounds to believe" or "it is probable" that the jury was "improperly influenced" or that the incident "had some persuasive effect on the jury's decision." In fact the record reveals the trial court was painstakingly careful after this incident to assure the trial was conducted fairly in appellant's

absence. Moreover, the record shows the evidence was overwhelmingly supportive of guilt. It clearly shows the offenses were committed and that appellant was the perpetrator of the offenses. *See, Morgan, supra; Whitten v. State,* (1975) 263 Ind. 407, 333 N.E.2d 86. There is no reason to believe the verdict was the product of the jury's viewing of the incident in question.

As to appellant's assertion he was entitled to an admonishment of the jury to disregard the incident they had seen, we note no request for an admonishment was ever made. In the absence of such a request no admonishment is required. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34; *Pullins v. State,* (1970) 253 Ind. 644, 256 N.E.2d 553.

Appellant claims the trial court erred in not permitting him to *voir dire* the jury prior to the habitual offender phase of the trial. He contends since the jury had already heard evidence on the substantive offense at this stage of the trial, he should have been permitted to *voir dire* the jury at this point to determine if any jurors might be subject to challenge for cause on account of prejudice against him.

We are not persuaded this second *voir dire* of the jury in habitual offender proceedings is necessary when the guidelines of *Lawrence v. State,* (1972) 259 Ind. 306, 286 N.E.2d 830, are followed, as they were in this case. The jury was adequately instructed as to the burden of proof the State bore in the habitual offender proceeding. We hold it was not error for the trial judge to refuse appellant's request to *voir dire* the jury prior to the habitual offender phase of the trial. In fact we further hold it would be improper to allow a *voir dire* of the jury at that time.

Appellant claims the trial judge should have recused himself because of his prejudiced and biased attitude toward appellant. Appellant claims the trial court indicated this prejudice by making remarks about him which were repeated in a newspaper story. An affidavit sworn to by the reporter who wrote the story, and the story itself, were made a part of the Motion to Correct Errors. Appellant claims the facts in the affidavit demonstrate grounds for disqualification of the judge under Canon 3C(1)(a) of the *Code of Judicial Conduct.*

These remarks were made after appellant's trial and prior to sentencing. A reporter asked the judge about appellant's threats to make a citizen's arrest of the judge and other Vanderburgh County officials and try them before a "people's court" for certain alleged offenses. Appellant also claimed other prisoners in the Vanderburgh County Jail were going to assist him in making the arrests and conducting the "trial."

We do not see the judge's comments as reflected in the article as showing prejudice to appellant. The judge stated he was "mad" and "concerned" about appellant's threats. However, we do not see these remarks as showing such prejudice against appellant as to deprive him of the right to be tried before an impartial judge. At best the remarks attributed to the judge reflect the frustrations he must have felt in dealing with an extremely uncooperative defendant who had made thinly veiled threats against the judge and other Vanderburgh County officials. The Court of Appeals has observed the showing of a strained relationship between a party's attorney and the judge is not reason for the judge to be disqualified. *Leistikow v. Hoosier State Bank of Ind.,* (1979) Ind.App., 394 N.E.2d 225. The same may be said with respect to the relationship between the judge and the criminal defendant.

Moreover, the record fails to indicate any harm to appellant could have accrued as a result of this alleged prejudice. The remarks of the judge were made after the trial, with sentencing being the only step yet to be completed. Appellant received the minimum sentence he could have received on each count on which he was found guilty. Though the sentences were to run consecutively, the record shows appellant was on probation at the time the offenses were committed. Consecutive sentences were thus required under I.C. 35–50–

1–2 [Burns 1979 Repl.]. Because appellant had a prior unrelated felony conviction, suspension of any part of the sentences was prohibited under I.C. 35–50–2–2(a)(1) [Burns 1979 Repl.]. An appellant must show prejudice to his cause to gain a reversal. *Rodgers v. State*, (1981) Ind., 415 N.E.2d 57; *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713; *Bobbitt v. State*, (1977) 266 Ind. 164, 361 N.E.2d 1193. Given the relevant sentencing considerations appellant's total sentence was the minimum sentence he could have received; thus we cannot see how any harm could have accrued to him, assuming the judge did harbor prejudice and bias toward him.

This cause is remanded to the trial court for a correction of the sentencing as above indicated. The trial court is in all other things affirmed.

All Justices concur.