**Roman Lamont FRENCH,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 03A05–0009–CR–381.**

Court of Appeals of Indiana.

July 31, 2001.

Dennis M. Stark, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge

Appellant, Roman Lamont French, appeals the denial of his motion for change of judge and the denial of jail time credit. We reverse the denial of the motion for change of judge and remand for a new sentencing hearing.

On May 27, 1998, French was arrested in Bartholomew County for misdemeanor battery and invasion of privacy and detained in the Bartholomew County Jail. Thereafter, on August 22, 1998, while still being detained in the Bartholomew County Jail, French was involved in an altercation with a correctional officer. As a result, French was charged with Battery, a Class D felony, and Resisting Law Enforcement, a Class D felony, and later charged as a habitual offender. An arrest warrant, stemming from these charges, was served upon him on October 15, 1998.

On November 10, 1998, while French remained incarcerated, he was served with another warrant for Dealing in Cocaine, a Class A felony, under cause number 03D01–9810–DF–1044. French was tried on that charge and a habitual offender count, found guilty, and sentenced to sixty years incarceration. With regard to that sentence, French received jail time credit for the time spent incarcerated from May 27, 1998, the date he was originally incarcerated in the Bartholomew County Jail, to the date of his sentencing hearing on June 23, 1999.

On June 26, 2000, before the scheduled trial on the felony battery and resisting law enforcement charges, French filed a motion for change of judge. In his motion,

French claimed that after being transferred from the Michigan City prison to the Bartholomew County Jail, he learned of disparaging remarks the trial judge allegedly had made against him during the March 29, 2000 sentence modification hearing of another defendant, Larry Montel Booker. However, because French was not aware of the exact nature of the comments, he requested a transcript of the hearing. Once French received and reviewed the transcript, he filed another motion with the court on July 20, 2000, asking the court to set the change of judge motion for hearing. In the motion, French asserted that he had "reviewed the transcript provided by the Court and believe[d] that it accurately and completely sets forth the factual basis for [French's] [m]otion." Record at 80.

During the July 25, 2000 hearing on the change of judge motion, French testified under oath concerning the trial judge's comments and counsel introduced into evidence the transcript of Booker's sentence modification hearing. Particular reference was made to the following comments:

> "Well Mr. Booker, since you were sentenced back in February of ninety-eight, I've had the distinct displeasure of spending a lot of time with Roman Lamont French, and very little of that time has been very much fun. I really can't think of anybody who has been more disagreeable to deal with than him. *Had I been in your situation, I don't know that I would have shot the gun up in the air.* But I think at that time, I didn't know much about Mr. French. As I've said, I've learned a lot more about him since then. I'm going to go ahead and modify your sentence." Supplemental Record at 5–6, Defendant's Exhibit A (emphasis supplied).

Though French contended that the statement indicated bias on the part of the trial court, his motion was denied.

Thereafter, on August 4, 2000, French entered into a plea agreement with the State with regard to the charges arising from the jail altercation. In return for French's guilty plea to resisting law enforcement as a Class D felony, the State agreed to dismiss the battery and habitual offender charges and other unrelated charges and promised not to refile still other charges. On August 30, 2000, French was sentenced to the maximum sentence of three years incarceration to be served consecutive to his sixty-year sentence for dealing in cocaine. The trial court denied French any jail time credit because according to the trial court, French had already been awarded all of the credit to which he was entitled on the dealing charge.

## I.

### *Change of Judge*

■ French first contends that the trial judge erred in denying his motion for change of judge because the comments the judge made during Booker's sentence modification hearing demonstrated the judge's personal animosity and bias. French's motion was founded upon Criminal Rule 12 which provides as follows:

"**(B) Change of Judge—Felony and Misdemeanor Cases.** In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

* * *

**(D) Time Period for Filing Request for Change of Judge or Change of Venue.** In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

(1) *Ten Day Rule.* An application for a change of judge or change of venue from the county shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court or Court of Appeals, such application must be filed not later than ten (10) days after the party has knowledge that the cause is ready to be set for trial.

(2) *Subsequently Discovered Grounds.* If the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, *the applicant may file the application, which shall be verified by the party specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence.* Any opposing party shall have the right to file counter-affidavits on such issue within ten (10) days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion." Crim.R. 12(D) (emphasis supplied).

Though the State concedes that French was permitted to file a motion on subsequently discovered grounds, for the first time upon appeal the State contends that French failed to properly verify his petition and include the "facts showing the cause for a change." According to the State, while French admittedly did not discover the factual basis for the motion until after he had acquired the transcript, he had a duty to amend his original motion to include the factual basis. French's failure, the State argues, prevented the prosecutor from learning the factual basis for the motion until the July 25, 2000 hearing and denied it the opportunity to file counter-affidavits.

 When a defendant files a belated motion under Crim.R. 12(D)(2), "it must be verified by the party, specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for change, and why the cause could not have been discovered by the exercise of due diligence." *State v. Hahn*, 660 N.E.2d 606, 609 (Ind.Ct.App.1996), *trans. denied*. "The sine qua non of a verified petition is that the person executing it affirm under the penalties for perjury, or state upon oath, before an official authorized to administer oaths, that the representations within the body of the petition are true." *Hendricks v. State*, 426 N.E.2d 367, 369 (Ind.1981).

Upon reviewing the two motions filed by French, we agree that they were not verified, as they were not executed under penalty of perjury. The motions also did not include the facts showing the cause for change. The failure to comply with the procedural requirements of Crim.R. 12(D) has been held sufficient to justify the denial of a motion for change of judge. *See Flowers v. State*, 738 N.E.2d 1051, 1059–60 (Ind.2000) ("The law is settled that a defendant is not entitled to a change of judge

where the mandates of Criminal Rule 12 have not been followed."). *See also Carroll v. State*, 438 N.E.2d 745, 747 (Ind. 1982) ("[T]he failure to follow the clear dictates of Rule 12 of the Criminal Rules of Procedure justifies the denial of the motion . . .").

Nevertheless, French contends that the State has waived any argument concerning procedural deficiencies by failing to object at the hearing and electing to proceed on the merits. There is support for French's contention. It has been held that the failure to raise lack of verification at the earliest opportunity results in waiver upon appeal. In *Brown v. State*, 458 N.E.2d 245, 249 (Ind.Ct.App.1983), *trans. denied*, the defendant appealed the denial of his petition for post-conviction relief and, for the first time upon appeal, the State argued that the petition had not been properly verified and, therefore, should have been dismissed. This court noted that "want of verification is waived if an objection is not presented at the earliest possible opportunity" and, based upon this principle, found that the State had waived its claim. *Id.* at 249.

A similar result was reached in *Hendricks, supra*, 426 N.E.2d 367. Upon appeal of the denial of his petition for post-conviction relief, the petitioner argued that three delinquency petitions, originally filed in the juvenile court and eventually waived to criminal court, had not been properly verified. While agreeing that proper verification was lacking, our Supreme Court nevertheless concluded that "an objection to the defect should have been voiced immediately by a motion to quash or it would be deemed to have been waived." *Id.* at 369. *See also Franks v. State*, 261 Ind. 315, 302 N.E.2d 767 (1973) (discussing the holding in *Pierce v. State*, 253 Ind. 650, 256 N.E.2d 557 (1970)).

It has also been held that a prosecutor's failure to challenge a factual omission in a defendant's motion at the earliest opportunity precludes the State from raising that issue upon appeal. In *Harbaugh v. State*, 234 Ind. 420, 126 N.E.2d 576 (1955), the defendant appealed the denial of his motion to dismiss the charges against him for the alleged violation of his speedy trial rights. The defendant patterned his motion after a statute, which set forth his speedy trial rights, but failed to include all of the required facts. The prosecutor did not challenge the factual omission and proceeded to a hearing on the merits. The trial court denied the defendant's motion and the defendant appealed. For the first time upon appeal, the State argued that the defendant's failure to include the factual basis was fatal to his motion. The defendant responded that because the sufficiency of the motion was not challenged in the trial court, it could not be raised for the first time upon appeal. Our Supreme Court agreed, holding as follows:

> "By its negative action in failing to attack the petition by pleading and by its positive action in subsequently going to trial on the merits, the appellee, State of Indiana, waived its right to raise the technical question of omission or insufficiency in appellant's petition for dismissal for the first time in this court, by having gone to a factual hearing before the trial court on appellant's motion to dismiss." *Harbaugh*, 234 Ind. at 427, 126 N.E.2d at 579.

Based upon the aforementioned authority, we find that the State has waived its right to challenge procedural deficiencies.

Moreover, to sustain the court's ruling on either the lack of verification or failure to include a factual basis would elevate form over substance. Verification is required to ensure the filing of genuine claims.

> "The verification requirement serves to foreclose the bringing of frivolous petitions by imposing the penalties of perjury on the petitioner. If the appellant had objected at an early opportunity, the court indeed would have had to reject the petitions as insufficient and it could have afforded the probation department an opportunity to submit verified petitions. As it was, the case proceeded to the hearing on waiver to the criminal court during which sworn testimony of the alleged victims of the three alleged robberies was taken. This sworn testimony effectively served the purpose of assuring that the petition was not frivolous." *Hendricks*, 426 N.E.2d at 370.

Here, as in *Hendricks*, the lack of verification was cured by the introduction of the transcript of Booker's sentence modification hearing and French's sworn testimony.[1]

■ The purpose of requiring a factual basis was also fulfilled. A factual basis provides the opposing party with notice of the allegation to allow that party the opportunity to file counter-affidavits and prepare for a hearing on the motion. Here, while French did not include the judge's comments in either of his motions, in his original motion he included Booker's full name and provided the cause number and date of the sentencing hearing at which the alleged comments were made. In his subsequent motion, French opined that he had reviewed the transcript of the hearing mentioned in the original motion and believed it accurately set forth the factual

---

1. Moreover, there is no question the comments were indeed made because they were preserved in the transcript. This is not always the case as in some instances; the facts showing the cause for change of judge are spoken but not reduced to writing. *See Thakkar v. State*, 644 N.E.2d 609, 611 n. 1 (Ind.Ct. App.1994).

basis for his motion. At the hearing, the deputy prosecutor never claimed that she was not prepared to argue the petition on the merits because she did not have notice of the comments.[2] To the contrary, the record reveals that she argued that mere expressions of impatience, dissatisfaction, annoyance or anger on the part of a trial judge do not demonstrate bias or impartiality. The deputy prosecutor also presented case law to support her assertions. *See* Record at 203–206. Had the prosecutor truly been unaware of the factual basis for the motion, she would not have been able to refute the motion on the merits. While it is not clear how the prosecutor's office became aware of the comments, the purpose of the factual basis requirement was nonetheless fulfilled. Where the purpose of a rule is satisfied, this court will not elevate form over substance. *Cutter v. State*, 646 N.E.2d 704, 712 (Ind.Ct.App. 1995), *trans. denied.* To sustain the denial of French's motion on these procedural deficiencies would clearly elevate form over substance.[3] We now address the merits of the motion.

█ In ruling on a motion for change of judge, the trial court must determine whether the facts alleged by the petitioner support a rational inference of bias or prejudice. *Sturgeon v. State*, 719 N.E.2d 1173, 1181 (Ind.1999). Normally, a motion for change of judge is reviewed under a clearly erroneous standard. *Id.* at 1182. However, subsection (D)(2), addressing subsequently discovered grounds, specifically provides that "after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion." Crim.R. 12(D)(2). This standard of review recognizes the broad discretion afforded a trial court. *Sturgeon*, 719 N.E.2d at 1182.

In this case, the comments allegedly showing bias were the court's remarks concerning his disdain for the defendant and his empathy for Booker. The trial judge specifically stated that he could not "think of anybody who has been more disagreeable to deal with" and that had he been in Booker's situation, he did not know if he would have "shot the gun up in the air." Supp. R. at 5. The implication obviously being that the trial judge found French so provoking that he might have physically harmed him.

█ It is clear from the trial judge's comments that the judge became acquainted with French during the course of judicial proceedings. Normally, when a trial judge learns information about a defendant through the judicial process, bias and prejudice will not be found even if the judge

---

2. The State asserts that "the record seems to indicate that the State did not learn about the judge's comments at Booker's sentence modification hearing until the transcript from that hearing was introduced into evidence at the hearing on Defendant's motion for a change of judge...." Appellee's Brief at 6. It is true that at the change of judge hearing, the deputy prosecutor asked for a copy of the transcript of the hearing because she did not "see one in the file" and did not "know if one was sent to [the prosecutor's office]." Record at 198. However, these comments do not establish that the deputy prosecutor did not have notice of the particular comments and, considering that she argued the merits of the motion, there is little doubt that she must have.

3. The decision we reach today is not inconsistent with other precedent discussing Crim.R. 12. In *Blanche v. State*, 690 N.E.2d 709, 714 n. 2 (Ind.1998) our Supreme Court essentially recognized that the procedural elements of a Crim.R. 12 motion are not absolutely required in the sense that the failure to fulfill them will not automatically cause a motion to be defeated. *See id.* (noting that merits of the denial of defendant's change of judge motion would be addressed even though defendant did not comply with requirements of Crim.R. 12, where State did not raise procedural deficiencies upon appeal).

makes remarks which are critical, disapproving, or even hostile. *Sturgeon,* 719 N.E.2d at 1182. For example, in *Yager v. State,* 437 N.E.2d 454, 462 (Ind.1982) our Supreme Court concluded that a trial judge's comments that he was "mad" and "concerned" about a defendant's threats to make a citizen's arrest of the judge and other county officials and to bring them before a "people's court" did not demonstrate bias and prejudice on the part of the trial judge. The court explained:

"We do not see the judge's comments as reflected in the [newspaper] article as showing prejudice to appellant. The judge stated he was 'mad' and 'concerned' about appellant's threats. However, we do not see these remarks as showing such prejudice against appellant as to deprive him of the right to be tried before an impartial judge. At best the remarks attributed to the judge reflect the frustrations he must have felt in dealing with an extremely uncooperative defendant who had made thinly veiled threats against the judge and other Vanderburgh County officials. The Court of Appeals has observed the showing of a strained relationship between a party's attorney and the judge is not reason for the judge to be disqualified. The same may be said with respect to the relationship between the judge and the criminal defendant." *Id.* at 462 (citation omitted).

■ However, if a remark shows a high degree of antagonism so as to make fair judgment impossible, bias will be found. *Sturgeon,* 719 N.E.2d at 1182 (citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Such was the case in *Thakkar v. State,* 644 N.E.2d 609 (Ind.Ct.App.1994), where during a defendant's appeal but before sentencing, the trial judge publicly commented that the defendant had received a

fair trial, that devastating evidence had been presented, and that it was common for lawyers to blame their clients' misfortunes upon trial judges. This court noted that although the remarks "did not specifically relate to the sentencing hearing to be held, to the possible sentences which might be imposed, or to the factors which would be considered in reaching that determination, the remarks stray[ed] far afield from the objectivity and impartiality which trial courts are obligated to display." *Id.* at 611. The *Thakkar* court further noted that the comments clearly called into question the judge's objectivity. *Id.*

Though we recognize the highly deferential standard with which we review the trial court's ruling, we must conclude that the trial judge's comments in this case strayed from the objectivity and impartiality which trial judges are obligated to display. The court simply went beyond expressing frustration to displaying a high degree of antagonism so as to make a fair judgment virtually impossible. Our Supreme Court has made clear that "judges have a duty to promote public confidence in the impartiality of the judiciary and must thus refrain from engaging in conduct that would create a perception 'that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.'" *Noble v. State,* 725 N.E.2d 842, 848–49 (Ind.2000) (quoting the comment to the Ind.Judicial Conduct Canon 2(A)).

■ In the final analysis, as noted in *Thakkar v. State, supra:*

"The true question is whether 'an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality.' *Mahrdt v. State,* 629 N.E.2d 244, 248 (Ind.Ct.App.1994) (quoting Chief Justice Shepard's recusal statement in *Tyson v. State,* 622 N.E.2d 457 (Ind.

1993)). It should be noted that Chief Justice Shepard's recusal took place at the appellate stage, at which time there was no longer a presumption of innocence which attached to the defendant. In that respect, it is closer, by analogy, to a recusal for sentencing than for a recusal which is mandated at the guilt-determining stage." 644 N.E.2d at 612. The trial judge abused his discretion by denying French's motion for change of judge.

## II.

### Jail Time Credit

■■■ Though French will be entitled to a new sentencing hearing given our decision above, the issue of jail time credit will recur and therefore we briefly address that issue. French contends that the trial court erroneously denied him jail time credit for time served under the arrest warrant for the resisting charge. Specifically, French contends that although the trial court may have erroneously awarded him jail time credit on the sentence for dealing cocaine, he was nonetheless entitled to jail credit for the fifteen days served between his arrest for resisting and his arrest for dealing.[4] The State responds that because the defendant was ordered to serve his sentence consecutive to the sentence for dealing cocaine and received jail time credit for the period of incarceration in question, he was properly denied credit in this case.[5]

■■■ The State properly notes that when a defendant is incarcerated on multi-ple offenses and is ordered to serve his sentences consecutively, he is not entitled to double credit. *See Bryant v. State,* 446 N.E.2d 364, 366 (Ind.Ct.App.1983). However, the prohibition against an award of "double credit" applies when a defendant has arguably been incarcerated at the same time on more than one offense if the sentences for the multiple offenses are to be served consecutively. *See Diedrich v. State,* 744 N.E.2d 1004, 1005 (Ind.Ct.App. 2001) ("Confined awaiting trial or sentencing has been construed to mean confined as a result of the charge for which the defendant is being sentenced."); *Dolan v. State,* 420 N.E.2d 1364, 1373 (Ind.Ct.App. 1981) ("Credit time allowed by legislative grace toward a specific sentence clearly must be for time served for the offense for which that specific sentence was imposed."). Credit is calculated from the date of arrest to the date of sentencing for that same offense. *Dolan,* 420 N.E.2d at 1373.

In this case, French is not seeking jail time credit for the period arguably served under both the resisting and dealing warrants, but for time served after his arrest for resisting but before his arrest for dealing. With regard to the period in question, French was clearly serving time toward the resisting charge and not the dealing charge. Thus, if he has not been awarded credit for any other sentence which would be served consecutive to the sentence before us, French is entitled to credit for the fifteen days claimed. To the extent French's jail time credit was miscalculated on the dealing charge,[6] that issue is not before this court.

---

4. Although the arrest warrant upon the Resisting charge was served upon French on October 15, 1998, and the Dealing arrest occurred November 10, 1998, a period of 25 days, he claims credit only for 15 days.

5. The State also contends that the defendant has waived this issue because "the record is insufficient for this Court to review Defen-dant's claim." Appellee's Brief at 9. We disagree. Though certain orders are missing from the record, there is more than sufficient evidence in the record to review this claim.

6. As noted previously, French received credit for time served from May 27, 1998, the date he was originally incarcerated in the Bartho-

The judgment is reversed and the cause is remanded for a new sentencing hearing.

SHARPNACK, C.J., and MATHIAS, J., concur.

lomew County Jail, until the date of his sentencing for dealing in cocaine on June 23, 1999. However, French was not served with the warrant on the dealing charge until November 10, 1998. Thus, under the precedent of *Dolan, supra*, the trial court should have started calculating his credit time from the date of his arrest. While it is not entirely clear why French received jail time credit for time served before the service of the warrant, it appears that his credit award was merely miscalculated. During French's sentencing hearing on his guilty plea, the trial court stated, "I think one of the things that the Court did was gave Mr. French credit for time that he probably wasn't necessarily entitled to on the other [Dealing in Cocaine] case ... He would not have been entitled to any credit prior to the time the other case was charged and the warrant read on him on that one." Record at 281–82. At still another time during the hearing, the trial court remarked, "I gave you more credit time than you were entitled to when you came to Court last time ... Now while the Court will not resentence you on that case, I think that the credit days or most of the credit days if any that you are entitled to in this case, were applied in that case so you basically got them. And so from the Court's review of the record, there [are] no credit days to which you are entitled to in this case because you got those days on the other one. If they are on the wrong case, I mean I don't know, maybe I made a mistake." Record at 297–98.