Debra L. MORRIS, Appellant–
Defendant,

v.

BANK ONE, INDIANA, N.A., successor
to Bank One, Crawfordsville National
Association, Appellee–Plaintiff.

No. 54A01–0204–CV–139.

Court of Appeals of Indiana.

May 29, 2003.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Julia Blackwell Gelinas, Alan S. Brown, Allison S. Avery, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Debra Morris appeals a judgment against her[1] and in favor of Bank One on the bank's complaint on promissory notes, to foreclose mortgage, and for replevin. She asserts on appeal that the trial court improperly denied her request for a jury trial and improperly denied her husband Kenneth's motion for change of venue from the judge.

We affirm.[2]

## FACTS

The Morrises bought land with the intention of developing it as a subdivision and they obtained from the bank a $370,000 business line of credit. Kenneth and Debra jointly executed the line of credit agreement and a promissory note. To secure the loan they jointly executed a mortgage to the bank on several lots in the subdivision. The note provides that "Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not affect my duty to pay this note." (Supp.App. in Support of Br. of Appellee at 111) (hereinafter "Bank App.").

On May 25, 1994, in connection with a renewal of the note, Debra executed an unlimited and unconditional guaranty of all of Kenneth's existing and future obligations to the bank, which included a number of other notes. Kenneth and Debra defaulted on all the notes.

The bank brought its complaint on December 4, 1995 and amended it twice. Morris counterclaimed, asserting among other things that the bank fraudulently caused Morris to execute the guaranty; that the guaranty document itself was false and fraudulent; that Morris unknowingly signed it; that the bank unlawfully altered it after it was executed; that the bank constructively defrauded her by abusing its fiduciary relationship with Morris; and that the bank's fraudulent representations that subsequent loans would be available caused Kenneth's development business to fail. Kenneth's obligations on certain of the notes were discharged in bankruptcy but the discharge did not affect Morris' obligations on the notes as guarantor. Morris has since filed for bankruptcy.

## DENIAL OF JURY TRIAL[3]

■ The bank's complaint was for repayment of a number of promissory notes, for possession of equipment that secured the notes, for foreclosure of mortgages that secured other notes, and other related relief. Morris asked for a jury trial. The bank moved to strike the jury demand on the ground that the underlying claims were equitable and Morris was therefore

---

1. The complaint was brought against Morris and her husband Kenneth. Kenneth is not a party to this appeal.

2. We heard oral argument on April 28, 2003 in Indianapolis. We commend both counsel on their capable advocacy.

3. Because we find the jury trial request was properly denied, we do not address the bank's alternative argument that any error in the denial of a jury trial was harmless because a directed verdict for the bank would have been proper and a jury verdict could not have been sustained on appeal.

not entitled to a jury trial on her counterclaims. Its motion was granted.

A party is generally entitled to a jury trial on legal matters but not on equitable matters. *See, e.g., Songer v. Civitas Bank,* 771 N.E.2d 61 (Ind.2002). Where equity takes jurisdiction of the essential features of a cause it will determine the whole controversy even though there are incidental questions of a legal nature. *Id.* at 65. This rule is known as the equitable "cleanup doctrine."

Morris appears to argue this doctrine is no longer the law in Indiana. She asserts relatively recent decisions by this court applying that doctrine are in conflict with Ind. Trial Rule 38 and earlier decisions by our supreme court. Our supreme court recently addressed this question in *Songer,* a decision issued after Morris' brief was submitted but before her reply brief was submitted. The *Songer* decision indicated this court and our supreme court have on occasion applied the cleanup doctrine too broadly, but it leaves no doubt the doctrine is still with us.

Article I, section 20 of our state constitution preserves the right to a jury trial as it existed at common law, and a party is not entitled to a jury trial on equitable claims. *Id.* at 63. This is reflected in T.R. 38(A):

> Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.

*Songer* distilled Rule 38(A) into three principles. First, suits for which jurisdiction was exclusively equitable prior to June 18, 1852, are to be tried by the court. Second, issues of fact in all other suits are to be tried "as the same are now triable." Finally, when both equitable and legal *causes of action or defenses* are joined in a single case, the equitable causes of action or defenses are to be tried by the court while the legal causes of action or defenses are to be tried by a jury. 771 N.E.2d at 64.

T.R. 38 did not do away with the equitable "cleanup doctrine": "Where equity takes jurisdiction of the essential features of a cause, it will determine *the whole controversy,* though there may be incidental questions of a legal nature." *Id.* at 65 (quoting *Field v. Brown,* 146 Ind. 293, 295, 45 N.E. 464, 464 (1896)) (emphasis added by *Songer*). The *Field* statement did not, however, mean that numerous causes of action stated in various paragraphs of complaint may not be severed, and those of an equitable nature tried by the court, and those of a legal character tried by a jury.[4]

---

4. Morris relies on this passage to argue she is entitled to a jury trial on her legal counterclaims. However, she appears to misunderstand the distinction between a "cause" and a "cause of action." A "cause" is a lawsuit. *Id.* at 66. A "cause of action" is a legal theory of a lawsuit, *id.,* so several "causes of action" can potentially be encompassed within a single "cause." Thus, under T.R. 38,

where the essential features of a suit sound in equity, the entire controversy is drawn into equity, including incidental questions of a legal nature. *Id.*

The *Songer* court noted the inverse must also be true. "Where equity does not take jurisdiction of the essential features of a cause, a multi-count complaint may be severed, and different issues may be tried before

771 N.E.2d at 66. The *Songer* court emphasized that the inclusion of an equitable claim does not by itself warrant drawing an entire case into equity. Something more than the mere presence of an equitable claim is necessary. *Id.* at 68.

Songer personally executed promissory notes in which he promised to pay Civitas approximately $500,000 plus interest. He also granted Civitas a mortgage on real property owned by his corporation. Songer made only one payment on the promissory notes and defaulted. Civitas' complaint listed two counts. In count one, Civitas sought to collect the principal on the notes, accrued interest, costs and attorneys' fees. In count two, it sought an order authorizing it to liquidate Songer's collateral, a determination of lien priority in the collateral if required, an extinguishment of rights of all parties claiming an interest in the collateral, and for other relief.

In his answer, Songer asserted six affirmative defenses: (1) lack of consideration, (2) conversion, (3) forgery, (4) estoppel, (5) fraud, and (6) lack of holder-in-due-course status. He requested a jury trial on the entire subject matter of Civitas' complaint, and the trial court denied the request.

The *Songer* court phrased the question as whether the essential features of the suit are equitable:

> To determine if equity takes jurisdiction of the essential features of a suit, we evaluate the nature of the underlying substantive claim and look beyond both the label a party affixes to the action and the subsidiary issues that may arise within such claims. Courts must look to the substance and central character of the complaint, the rights and interests involved, and the relief demanded. In the appropriate case, the issues arising out of discovery may also be important.

*Id.* at 68.

Our supreme court noted the "vast weight of authority" holding foreclosure actions are essentially equitable. *Id.* And being essentially equitable, the whole of the claim is drawn into equity, including related legal claims and counterclaims.[5] *Id.* The crux of Songer's argument was that Civitas' desire to foreclose the lien was only incidental to its primary goal of recovering a money judgment against Songer for the collection of the promissory notes.

either a jury or the court at the same proceeding." *Id.* Morris does not argue that the equitable foreclosure action is not the "essential feature" of the cause before us, and we find that it is.

Because severance of a multiple count complaint is appropriate when "equity does not take jurisdiction of the essential features of a cause," trial judges are well-advised in light of *Songer* to enter findings as to whether a multiple count complaint is essentially equitable and if not, which counts of the complaint might properly be severable for jury trial purposes.

**5.** Morris directs us to *Broadhurst v. Moenning,* 633 N.E.2d 326 (Ind.Ct.App.1994), where Broadhurst argued the trial rule providing for compulsory counterclaims violated his constitutional right to a jury trial if he was required to assert his legal claims for breach of contract and interference with contractual relations as compulsory counterclaims in a foreclosure action.

We determined that question was not reviewable in that case. Morris asserts it is properly framed and reviewable in the case before us, and asks "Will the Trial Rules be trumped by the common law equitable-clean-up-waiver doctrine, which was made obsolete by the requirement for compulsory counterclaims?" (Br. of the Appellant at 16.) While we question some of the premises for Morris' query, the answer, according to *Songer,* is yes: when an action is "essentially equitable, the whole of the claim is drawn into equity, including related legal claims *and counterclaims.*" 771 N.E.2d at 68 (emphasis supplied)..

The court agreed that Civitas' core objective was to regain the funds it lent but noted

> this was not through a money judgment. The purpose of count one was to establish the amount Civitas was entitled to collect out of the collateral it possessed, including interest and attorneys' fees.... It was not a judgment lien Civitas sought, but rather court authorization to liquidate the collateral it held.... At its heart, this was a suit to foreclose a lien on property.

*Id.* Songer was therefore not entitled to a jury trial.

The *Songer* reasoning dictates the same result in the case before us. Morris, like Songer, asserted legal defenses of fraud and forgery to the equitable action for foreclosure. The bank's "core objective," like that of Civitas, was "to regain the funds it lent" and the promissory notes to the bank were secured by the mortgage on the lots in the subdivision the Morrises were developing.

Morris points to *Hartlep v. Murphy*, 197 Ind. 222, 150 N.E. 312 (1926) as a decision that preserved the right to jury trial in a "similar situation ... where a surety denied the execution of a surety agreement in a counterclaim." (Br. of the Appellant at 10–11.) There, the surety denied executing the notes sued upon and asked for a jury trial. The trial court denied the request.

Our supreme court reversed, noting that while the case involved a mortgage the plaintiff sought to foreclose,

> "The mortgage sought to be foreclosed did not purport to have been signed by appellant, nor did the complaint or cross-complaint charge him with having executed it ... whatever right, in equity, these facts might give the creditors to foreclose as against the land, they could give no right to recover anything

from the appellant. Plaintiffs' right of action to recover a personal judgment against him depended wholly upon the alleged fact that appellant was indebted to plaintiff by reason of having executed the notes sued on. The denial of that fact, under oath, formed an issue which, if there were no other issues, would clearly be triable by a jury."

*Id.* at 229, 150 N.E. at 313–14.

The *Hartlep* court distinguished the situation before it from "an ordinary suit to recover on promissory notes and to foreclose a mortgage securing them," which would not be triable by jury due to the application of the equitable cleanup doctrine. *Id.*, 150 N.E. at 315. The case before us is such an "ordinary suit"; we therefore cannot say the trial court erred to the extent it determined the action was essentially equitable and therefore not triable by jury.

## CHANGE OF VENUE FROM JUDGE

■ Kenneth Morris, Morris' husband and co-defendant below, moved for a change of venue from the judge on grounds the judge was biased and prejudiced against him. His motion was denied.

The bank notes initially that Kenneth is not a party to this appeal. Therefore, it asserts, Morris has no standing to appeal the denial of the motion Kenneth filed. Morris does not address the standing question in either her brief or her reply brief, except to assert that Kenneth offered testimony on "the crucial issues of Debra Morris' defense to the complaint, and her counter-complaint," (Br. of the Appellant at 17–18), and she "bears the brunt here of the judge's negative impressions of her husband." (*Id.* at 18.)

Morris does not have standing to appeal the denial of her husband's motion. The issue of standing focuses on whether the complaining party is the proper person to

invoke the court's power. *Shand Min., Inc. v. Clay County Bd. of Com'rs*, 671 N.E.2d 477, 479 (Ind.Ct.App.1996), *reh'g denied, trans. denied* 683 N.E.2d 595 (Ind. 1997). To have standing, a party must demonstrate a personal stake in the outcome of the lawsuit and must show, at a minimum, that it was in immediate danger of sustaining some direct injury as a result of the conduct at issue. *Id.*

One defendant does not have standing to appeal a judgment rendered in favor of a co-defendant unless the defendant suffers some prejudice as a result of the entry of judgment in favor of the co-defendant. *Id.* In *Travelers Indem. Co. v. P.R. Mallory & Co.*, 772 N.E.2d 479, 483 (Ind.Ct.App. 2002), we addressed an argument that Travelers lacked standing to appeal a ruling on competing motions to dismiss and a request for injunctive relief. Travelers sought relief from a portion of an order that was specifically directed to a party other than Travelers, and it sought relief in one court from an order concerning a different action in a different court that had since been voluntarily dismissed and in which Travelers had not been joined as a party.

We noted that the rationale upon which the challenged ruling was based, if applied in future rulings, would have prevented Travelers from "litigating any aspect of the legal dispute involving Kraft in any forum other than the instant case in Montgomery County, Indiana" and we therefore found Travelers had standing. *Id.* at 484. Morris' implicit premise that she was prejudiced because the judge might have questioned the credibility of her husband-witness is far more speculative. Morris has not demonstrated she was prejudiced by the denial of another party's motion, and she therefore lacks standing to raise that issue on appeal.

■ Even if Morris had standing, the denial of Kenneth's motion was not error. A ruling on a motion for change of venue from the judge may be reviewed only for an abuse of discretion. *Jackson v. Farmers State Bank*, 481 N.E.2d 395, 401 (Ind. Ct.App.1985), *reh'g denied, trans. denied.* Upon review of a trial judge's decision not to disqualify himself, we presume that the trial judge is unbiased. *Leisure v. Leisure*, 589 N.E.2d 1163, 1168 (Ind.Ct.App. 1992), *holding adopted and incorporated by reference* 605 N.E.2d 755 (Ind.1993).

In order to overcome that presumption, the appellant must demonstrate actual personal bias. *Id.* Unless presented with evidence to the contrary, we assume the judge would have complied with the obligation to disqualify himself had there been any reasonable question concerning his impartiality. *Id.* In ruling on a motion for change of judge, the trial court must determine whether the facts alleged by the petitioner support a rational inference of bias or prejudice. *French v. State*, 754 N.E.2d 9, 15 (Ind.Ct.App.2001).

In an affidavit submitted to the trial court in the present action, Kenneth stated that in prior litigation to which Kenneth was a party, the trial judge, who is the trial judge in the case before us, made remarks questioning Kenneth's credibility. The affidavit [6] indicates the judge stated "Mr. Morris' credibility is very, very questionable"; the transaction in which Kenneth was involved was "nothing more than a sham transaction by two individuals conspiring"; Kenneth convinced another party to "'sign over' the equipment to his ... control in a deliberate and calculated attempt to defraud"; and that Kenneth's claim to certain equipment was "meritless and fraudulent." (App. of the Appellant at 55.)

6. The affidavit states the trial court's order was attached to it. However, the order does not appear to be included in Morris' appendix.

We noted in *Crawford v. State*, 634 N.E.2d 86, 87–88 (Ind.Ct.App.1994) that

opinions formed by the judge on the basis of facts introduced or events occurring . . . out of prior proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical and disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger[.]

(quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). The *Liteky* court noted:

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Also not subject to deprecatory characterization

as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

510 U.S. at 550–51, 114 S.Ct. 1147 (citation omitted).

Morris relies on *French*, where we stated "if a remark shows a high degree of antagonism so as to make fair judgment impossible, bias will be found." 754 N.E.2d at 16. There, the judge referred to French while addressing another defendant whose sentence was being modified: "I've had the distinct displeasure of spending a lot of time with [French] . . . I really can't think of anybody who has been more disagreeable to deal with than him. Had I been in your situation, I don't know that I would have shot the gun up in the air." *Id.* at 11. That statement, we determined, "went beyond expressing frustration to displaying a high degree of antagonism so as to make a fair judgment virtually impossible." *Id.* at 16.

By contrast, in *Blacknell v. State*, 502 N.E.2d 899, 903 (Ind.1987), *reh'g denied*, Blacknell applied for a change of judge because the trial judge previously had filed a disciplinary complaint against his attorney regarding a newspaper article that appeared in a local paper. Our supreme court found no error in the trial court's refusal to appoint a new judge: "The trial judge's action is in no way evidence of impartiality [sic]. There is absolutely no evidence that it resulted in Blacknell being treated unfairly." *Id.* at 904.

In *Smith v. State*, 474 N.E.2d 71, 74 (Ind.1985), the trial judge presided over Smith's first trial, which resulted in a hung jury. At the sentencing hearing of the second trial, the trial judge said:

I had the opportunity to hear this trial twice, and, Mr. Smith . . . if I heard the

case to the Court, I would have found you guilty the first time. Because I had had no reasonable doubt that you were the one that committed this crime. But that's not my prospect even though I have my own, you know, I'm voicing my opinion in terms of dealing with these crimes.

Our supreme court recognized that this statement indicated the trial judge had a predisposed opinion as to appellant's guilt at the start of the second trial. However, the statement did not indicate whether the trial judge was "able to conduct the trial impartially despite his personal opinion. After a careful review of the record, we find that the trial was conducted impartially and fairly.... The trial judge did not err in not removing himself from the second trial." *Id.*

The statements the judge made in a prior case about Morris' co-defendant were in the nature of knowledge properly and necessarily acquired in the course of the proceedings and the opinion produced by that knowledge, and are therefore not properly characterized as "bias" or "prejudice." We cannot say the judge abused his discretion in declining to grant Morris' motion.

## CONCLUSION

The bank's action against Morris was essentially equitable and the trial court therefore did not err when it struck Morris' jury trial demand. Morris did not demonstrate the trial judge was personally biased against her co-defendant husband, and the denial of the motion for change of venue from the judge was not error. We affirm the trial court.

BROOK, C.J., and FRIEDLANDER, J., concur.