**In the Matter of James A. LEWIS.**

**No. 84S00–8701–DI–55.**

Supreme Court of Indiana.

March 10, 1989.

William G. Smock, Terre Haute, for respondent.

Sheldon A. Breskow, Executive Secretary David B. Hughes, Trial Counsel, Indianapolis, for the Indiana Supreme Court Disciplinary Comm'n.

## DISCIPLINARY ACTION

### PER CURIAM.

This Disciplinary Action is now before this Court on a conditional agreement tendered by the parties seeking approval of a suspension for a period of four years predicated on the professional misconduct of the Respondent. Upon review of this matter, we now approve the proposed agreement.

The Respondent has been charged with violating Disciplinary Rules 1–102(A)(1), (5), and (6) of the *Code of Professional Responsibility* by engaging in conduct prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law. He is further charged with violating Canons 1, 2(A), 2(B), and 3(A)(4) of the *Code of Judicial Conduct* by failing to act honorably, failing to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary, allowing his social or other relationships to influence his judicial conduct or judgment, and engaging in prohibited *ex parte* communications regarding pending proceedings.

The parties have agreed and we now find that the Respondent was admitted to the practice of law in this state on April 29, 1975, and, accordingly, is subject to the disciplinary jurisdiction of this Court. At all times material to the charges in this proceeding, the Respondent served as the Judge of the Terre Haute (Indiana) City Court. On or about May 5, 1983, the Respondent, in his chambers, engaged in a conversation with Frank E. (Chuck) Roberts, Jr., a convicted felon, client, and personal friend of the Respondent. During this conversation, the Respondent and Roberts discussed the criminal charges then pending against Roberts' son; the Respondent said in sum and substance that he was very angry with Roberts for having backed a certain politician in Vigo County and that "... there is stuff that can be done for you ..." and "... you're going to get down where you ain't going to be able to get no favors."

The parties have agreed and we further find that on or about June 21, 1983, the Respondent conversed privately in his chambers with Craig Roberts, a client and personal friend. At this time, among other things, the Respondent discussed with Craig Roberts the charges then pending before the Respondent against Craig Roberts' nephew and against Chuck Roberts, Jr. Respondent informed Craig Roberts that the prosecutor and his witnesses wanted to "hang" Chuck Roberts, Jr. At this time, the Respondent also discussed with Craig Roberts the merits of a case involving Ed Jarvis then pending before the Respondent. Respondent advised Craig Roberts that if any of his friends had any "deals" going with Ed Jarvis that they had better watch out because Jarvis was "scared," "talking," and ready to "cough it up."

The agreement tendered by the parties further stipulates and we accordingly find that the Respondent had additional conver-

sations of a prohibited nature with individuals. On or about August 5, 1983, the Respondent again, privately in chambers, engaged in a conversation with Craig Roberts and discussed an individual named Hobie Roberts and the sentence the Respondent might give if Hobie Roberts got into trouble again; at this time the Respondent also discussed the pending criminal charges against one Jerry Hole, a.k.a. Dan J. Mingo, and in sum and substance stated to Roberts that something could be worked out concerning this pending case.

On or about November 3, 1983, Respondent met privately in his chambers with Chuck Roberts and discussed one Harold Rogers who had criminal charges pending against him in Vigo County and previously had been convicted and sentenced in the Respondent's court. The parties discussed whether the Respondent would "cop" or "cut" the remainder of Rogers' sentence if he received probation on the then pending charges. Roberts was informed by Respondent that he would immediately "cut" the sentence upon Rogers' return from jail. The next day the Respondent and Roberts again met privately in chambers and discussed the matter involving Rogers. Roberts asked the Respondent to suspend Rogers' remaining farm time and place Rogers on probation in a manner that Rogers would not have to be returned to the Indiana State Farm before being released. Respondent agreed to do so with the understanding that Rogers would spend the next ten days in a detoxification facility. The Respondent then called and reserved a place for Rogers in the Vigo County detoxification facility and thereafter called the jail and ordered Rogers released to Chuck Roberts for the reason that Rogers' sentence had been suspended.

By reason of the above findings of fact, we now conclude that Respondent's conduct was not limited to casual discourse with individuals concerned with matters then pending before Respondent. The Respondent freely and openly discussed the merits of the controversy in an atmosphere which is without justification in the professional resolution of disputes. Respondent was not an attorney serving as a judge, but conducted his judicial duties as a broker of favor. Respondent's conduct clearly violated the above noted provisions in the *Code of Professional Responsibility* and the *Code of Judicial Conduct.*

There is no place in the judicial process for conduct as demonstrated by the Respondent in this cause. His conduct has been a disservice to the citizens of his community and the entire legal profession. Regardless of the significance of the proceeding pending before a judge, he must approach the matter with a view toward maintaining public confidence in the integrity of the process. It is our assessment that the Respondent is totally unaware of this professional obligation.

 There is no question that were this matter to come before this court without an agreed recommendation as to sanction, we would be inclined, predicated on the facts found in this case, to impose the ultimate sanction of Disbarment. The parties in this action, however, have agreed that it would be appropriate to impose a sanction of a four year suspension. They have presented this court matters in mitigation to support this recommendation.

In 1984 the Respondent closed his law office and since that date has performed only minimum legal work utilizing space in his home as his office. At the time of the events occurred in this case, the Respondent was in poor health and he continues to be in poor health; his health problems have required hospitalizations because of a heart condition and diabetes. After these charges were filed against him, he resigned as judge of the city court in an effort to diminish publicity and embarrassment to the judiciary. And lastly, the parties note that the Respondent is blind and that there is no employment comparable to practicing law by which the Respondent can support himself, his wife, and his children.

Although this Court is gravely concerned by the conduct of the Respondent, we view the mitigation presented in this case as significant and conclude that the recommended sanction would be appropriate. It is therefore ordered that, by reason of the

misconduct found in this case, the Respondent is hereby suspended from the practice of law for a period of four years beginning April 1, 1989.

Cost of this proceeding is assessed against the Respondent.