**Dwayne NOBLE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 82S00–9811–CR–748.**

Supreme Court of Indiana.

March 24, 2000.

John D. Clouse, John P. Brinson, Evansville, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Dwayne Noble appeals his convictions for attempted murder and attempted child molesting. Noble raises four questions:

- I. Whether the evidence was sufficient to support his convictions;
- II. Whether the court improperly limited his cross-examination of one of the witnesses;
- III. Whether the court wrongly denied Noble's tendered instruction on battery as a lesser included offense of attempted murder; and
- IV. Whether the court erred in denying Noble's motion for change of judge.

### Facts and Procedural History

In January 1998, Dwayne Noble went to the home of Bessie Clark. Clark and No-

ble had previously dated, and they remained on friendly terms. The two visited for several minutes, then both departed. When Clark left, she told S.J. to lock the door behind her; S.J. was staying with Clark at the time.

Noble later returned to Clark's home, knocked on the door, and asked S.J. if he could come in and retrieve some cigarettes that he had left there. S.J. allowed Noble to enter. S.J. then went into the bathroom. When she came out, Noble was standing outside the bathroom door. Noble picked S.J. up, carried her into the restroom, and sat her on the sink countertop. Noble next unzipped his pants, exposed his penis to S.J., and told her to "open [her] mouth." (R. at 101.) S.J. refused. Noble then began choking S.J. and told her if she told anyone about the incident, he would kill her. S.J. soon lost consciousness.

When S.J. awoke, she was covered in blood and found a knife stuck in her neck. She called her mother and her aunt, and then dialed 911.

The State charged Noble with attempted murder[1] and attempted child molesting[2] as class A felonies and the jury found him guilty. The trial court sentenced Noble to forty years for attempted murder and added thirty years for Noble's status as an habitual offender. It ordered a consecutive sentence of forty years for attempted child molesting.

## I. Sufficiency of the Evidence

■ Noble's sufficiency claim rests on the fact that the State's forensic specialists found no blood or semen on Noble's clothing following the crimes. (Appellant's Br. at 25.) As Noble's attorney says, "We weigh the scientific evidence against the non-scientific. The first has a huge advantage because it does not forget nor does it lie." Id. at 27.

■ To establish attempted murder, the State must prove beyond a reasonable doubt that Noble acted with specific intent to kill and took a substantial step toward the commission of the crime. Ind.Code Ann. § 35–41–5–1 (West 1998); Mitchem v. State, 685 N.E.2d 671 (Ind.1997). "Intent may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." Johnson v. State, 455 N.E.2d 932 (Ind.1983).

■ Likewise, to establish attempted child molesting, the State must prove that Noble knowingly or intentionally attempted to commit child molesting, and engaged in an overt act constituting a substantial step toward the commission of the crime. Richeson v. State, 704 N.E.2d 1008 (Ind. 1998) (specific intent not required in attempt crimes other than murder); Ward v. State, 528 N.E.2d 52, 54 (Ind.1988) (elements of attempted child molesting).

Here, the victim declared that Noble, someone she already knew, was her attacker; she said so in the hospital following the incident, and again at trial. A neighbor also testified that she saw Noble lurking around the house on the evening of the attack after the victim's family had departed. We agree with counsel that the fact that the forensic serologist did not find any of Noble's DNA on the victim or any of the victim's blood on Noble's clothing is worth consideration.[3] Like counsel, we trust juries to sort out such evidence in searching for the truth. The evidence was sufficient to sustain their verdict that it was Noble who committed the crimes.

## II. Exclusion of Evidence

■ Noble next contends that the trial court erred in limiting the testimony of Bessie Clark, S.J.'s grandmother.

1. Ind.Code Ann. § 35–41–5–1 (West 1998); Ind.Code Ann. § 35–42–1–1 (West 1998).

2. Ind.Code Ann. § 35–41–5–1 (West 1998); Ind.Code Ann. § 35–42–4–3 (West 1998).

3. The scientist also made it clear, however, that this did not exclude Noble as the perpetrator. (R. at 445.)

Clark testified for the State. On cross-examination, the defense asked Clark whether her daughter, S.J.'s mother, was married to a man named Cory. Clark responded affirmatively. The defense then asked whether there was "ever any accusation made that Cory had been molesting or messing around with [S.J.'s] sister." (R. at 87.) The State objected before Clark could answer. The defense argued that the "defendant has a right to pursue the line of inquiry that someone else may have committed the crime and that's why we're going in this direction." (*Id.*) After an unrecorded bench conference, the court sustained the objection without explanation.

Noble asserts that the trial court erred in excluding Clark's testimony about Cory, saying the evidence tended to show that a third party might have committed the crimes charged. (Appellant's Br. at 11.)

We are unable to review this issue because Noble did not make an offer to prove, that is, "an 'offer' from counsel regarding what a witness would say if he was allowed to testify." *Bradford v. State*, 675 N.E.2d 296, 301 (Ind.1996). The Rules of Evidence require that the substance of the evidence be made known to the trial court and that the offer to prove identify the grounds for admission and the relevance of the testimony. Ind. Evidence Rule 103(a); *Hilton v. State*, 648 N.E.2d 361 (Ind.1995).

Here, the defense gave no indication to the trial court, other than the implication in counsel's question, that Clark would testify that another person committed the crimes charged against Noble. For all that appears, Clark would have answered counsel's question in the negative. As such, the issue is waived. *See Roach v. State*, 695 N.E.2d 934, 940 (Ind.1998), *modified on other grounds by* 711 N.E.2d 1237 (1999).

### III. Instruction on Lesser Included Offense

Noble next contends the trial court improperly declined to instruct the jury on battery as a lesser included offense of attempted murder.

■ To determine whether to instruct the jury on a lesser included offense of a charged crime, the court must employ the three-step test outlined in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). First, the court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine whether the lesser included offense is "inherently included" in the crime charged. *Id.* at 566.

If the lesser offense is not inherently included, the court must then proceed to step two and decide whether the offense is "factually included" in the crime charged. *Id.* at 567. This determination involves comparing the statute defining the alleged lesser included offense with the charging instrument in the case.

■ Finally, if the court determines that the alleged lesser included offense is either inherently or factually included within the crime charged, then it must evaluate the evidence presented by both parties. If there is a serious evidentiary dispute about the elements distinguishing the greater offense from the lesser offense and "if, in the view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* If there is no meaningful evidence from which the jury could properly find the lesser offense was committed, however, the court should not give the lesser included offense instruction. *Id.*

The parties in the instant case agree that the crime of battery is not an inherently included offense of attempted murder. (*See* Appellant's Br. at 22; Appellee's Br. at 10); *see also Leon v. State*, 525 N.E.2d 331, 332 (Ind.1988). The parties also agree that, under the facts presented here, battery is a factually included offense of attempted murder because the charging

information alleged that Noble "stabb[ed] and/or cut[ ]" S.J. (Appellant's Br. at 22; Appellee's Br. at 10–11; R. at 8.) The remaining question is whether there is a serious evidentiary dispute about the elements distinguishing battery from attempted murder.

■ The trial court made no finding as to whether a serious evidentiary dispute existed, nor did Noble make a specific claim as to the nature of this dispute at trial. Therefore, our standard of review is abuse of discretion. *See Brown v. State*, 703 N.E.2d 1010, 1020 (Ind.1998).

■ The distinguishing element between battery and attempted murder is intent. *Wilson v. State*, 697 N.E.2d 466, 475 (Ind.1998). Thus, we examine the evidence to see whether there is a serious evidentiary dispute about what Noble intended to do – kill or batter. *See id.* (citing *Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991)).

In addressing this point, we find *Leon*, 525 N.E.2d 331, instructive. In *Leon*, the defendant was tried and convicted of attempted murder. On appeal, he argued that the trial court erred in refusing his tendered instruction on the lesser included offense of battery. *Id.* at 332. This Court determined that the evidence did not warrant the battery instruction stating:

> The distinguishing element between these two offenses is intent to kill. The evidence supporting that element is not in dispute. Had Leon argued that the shooting was an accident or that he fired mere warning shots, the evidence might justify an instruction on battery. Leon's defense, however, was not that he lacked the requisite intent, but that he did not commit the act at all. The evidence thus did not warrant the instruction on battery as a lesser included offense which appellant requested.

*Id.*

■ Our review of the record reveals no evidence that Noble intended only to batter S.J. when he choked and stabbed her. Use of a deadly weapon in a manner likely to cause death or great bodily harm is sufficient to show the requisite intent to kill. *Wilson*, 697 N.E.2d at 476. Moreover, Noble does not assert that he did not have the requisite intent to kill. Rather, he has defended himself by asserting that he was not the perpetrator. Thus, the trial court did not abuse its discretion when it refused Noble's battery instruction.

## IV. Motion for Change of Judge

■ Finally, Noble contends that the trial court erred in denying his motion for change of judge.

On the day of sentencing, Noble filed a verified motion for change of judge. In an affidavit in support of his motion, Noble cited the following historical facts:

3. In the Evansville Courier of the 18th day of August, 1998, an article appeared in which the jury's foreman, one Brian Schmitt was quoted as saying that Judge O'Connor said the following:

> "He told us Noble is going to wish he'd never done this."

A copy of this news story is attached hereto as Exhibit A.

4. In a case of this kind the State of Indiana has a mandatory sentencing procedure whereby a pre-sentence investigation report is made and filed which is to provide guidelines and to assist the Judge in imposing sentence[s] in a criminal case.

5. For the Judge to comment on the severity of the sentence he will impose, without having read a pre-sentence investigation report, demonstrates the bias and prejudice referred to in Rule 12 of the Indiana Rules of Criminal Procedure.

(*Id.*) Noble also attached a copy of the newspaper article. (R. at 53.)

Under Ind. Criminal Rule 12(B), a defendant may request a change of judge for

bias or prejudice by filing an affidavit that the judge has a personal bias against a party and by stating the facts and reasons for the belief that such bias or prejudice exists. Ind.Crim. Rule 12(B); *Sturgeon v. State*, 719 N.E.2d 1173, 1181 (Ind.1999). "The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Crim. R. 12(B).

A change of judge is neither "automatic" nor "discretionary." *Sturgeon*, 719 N.E.2d at 1181. In considering a motion for change of judge, the trial judge must examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice. *Id.* In reviewing the trial court's decision, we consider whether the decision was clearly erroneous and will reverse only upon a showing of clear error – one that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 1182.

Generally, a trial judge's exposure to evidence through judicial sources is, alone, insufficient to establish bias. *Id.* at 1181. With regard to comments made during the course of a trial in response to information learned in judicial proceedings, the U.S. Supreme Court has said:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, ... the parties, or

their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 1182 (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

Claims about "judicial remarks" have arisen in a variety of situations in which judges 1) publicly commented on a pending case,[4] 2) engaged in a private conversation or an *ex parte* communication regarding a pending case,[5] or 3) commented about a case in open court during the course of a trial.[6] This case presents a slightly different situation – one in which the trial judge had a conversation with the jurors following a trial.

Subsequent to a jury's discharge, it is appropriate for a judge to converse with jurors or to express appreciation to the jurors for their service to the community, as long as the judge does not commend or criticize jurors for their verdict.[7] Indeed, this communication between judges and jurors helps citizens appreciate the gratitude that our society has for their effort.

Still, judges have a duty to promote public confidence in the impartiality of the judiciary and must thus refrain from engaging in conduct that would create a perception "that the judge's ability to carry

---

4. *See, e.g., Matheney v. State*, 688 N.E.2d 883 (Ind.1997) (judge discussed feelings about pending case with other judges at a conference), *cert. denied*, 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999); *Willis v. State*, 512 N.E.2d 871 (Ind.Ct.App.1987) (judge was quoted in local newspaper regarding allegations that judge engaged in a private conversation with defendant before defendant's trial).

5. *Matheney*, 688 N.E.2d 883 (judge remarked on pending motion to a deputy public defender and county prosecutor while in chambers); *In re Sanders*, 674 N.E.2d 165 (Ind.1996) (judge met with State's witness in county jail outside presence of the State or defense coun-

sel); *In re Lewis*, 535 N.E.2d 127 (Ind.1989) (judge met with client in chambers and discussed merits of pending case against client's son); *Flynn v. State*, 494 N.E.2d 312 (Ind. 1986) (judge referred to defendant by use of a vulgar expletive while in chambers conversing with his court commissioner).

6. *Spaulding v. State*, 533 N.E.2d 597 (Ind.Ct. App.1989) (judge made extraneous remarks during voir dire and during witness's testimony).

7. Ind. Judicial Conduct Canon 3(B)(11); Jud. Canon 3(B)(11) cmt. ("Commending or criticizing jurors for their verdict may imply a judicial expectation in future cases.").

out judicial responsibilities with integrity, impartiality and competence is impaired." Jud. Canon 2(A) cmt.; *see also Tyson v. State,* 622 N.E.2d 457, 459 (Ind.1993).

The jurors in this case had already completed their function when the judge spoke with them, so the remark could not have interfered with or affected the jury's verdict. *See* Jud. Canon 3(B)(10); *Willis,* 512 N.E.2d at 877–78. At the time the remark was made, however, the court had not yet fully performed its own functions, as a sentence had not yet been imposed.[8] Thus, we address whether the judge's comment, as reflected in the article, supports a rational inference of bias or prejudice.

The present case bears some resemblance to another Vanderburgh County case, *Yager v. State,* 437 N.E.2d 454 (Ind. 1982). In *Yager,* the defendant claimed that the trial judge should have recused himself based on a "prejudiced and biased attitude" toward the defendant. *Id.* at 462. This claim was based on comments made by the judge that were repeated in a newspaper story. The remarks were made after the defendant's trial and before sentencing. *Id.* Specifically, a reporter asked the judge to comment on the defendant's threats to make a "citizen's arrest" of the judge and other county officials. The judge responded that he was "mad" and "concerned" about the defendant's threats. *Id.*

In affirming the trial court's decision to deny the defendant's motion for change of judge, this Court said:

> We do not see the judge's comments as reflected in the article as showing prejudice to appellant. The judge stated he was "mad" and "concerned" about the appellant's threats. However, we do not see these remarks as showing such prejudice against appellant as to deprive him

of the right to be tried before an impartial judge.

*Id.*

Conversely, in *Thakkar v. State,* 644 N.E.2d 609 (Ind.Ct.App.1994), our Court of Appeals determined that a trial judge should have recused himself based on comments made to the press during the defendant's appeal, but prior to sentencing. The trial judge attended the appellate oral argument and publicly commented that the defendant "had received a fair trial, that the evidence was devastating," and that "it was common for lawyers to blame the misfortunes of their clients upon the trial judge." *Id.* at 611. The defendant claimed that these comments demonstrated bias and prejudice that would have a negative impact upon him at sentencing. *Id.* The court agreed, concluding that, although the remarks did not relate specifically to sentencing, "the remarks stray far afield from the objectivity and impartiality which trial courts are obligated to display." *Id.*

We accept counsel's suggestion that Judge O'Connor's statement might be seen as that of a judge declaring himself for a lengthy sentence. It might also be seen, however, as declaring the straightforward truth that defendants who are convicted typically wish they had not committed their crimes.

Relying on the standard of review for such matters, we find ourselves unable to say that denying Noble's motion for change of judge was clearly erroneous.

### Conclusion

Accordingly, we affirm.

DICKSON, BOEHM, and RUCKER, JJ., concur.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

---

8.  *See People v. Belmontes,* 45 Cal.3d 744, 248 Cal.Rptr. 126, 755 P.2d 310, 352 (1988) (judge's decision to write personal letter praising jurors for their service and disposition of the case was improper, particularly where judge had not yet sentenced defendant, although error not reversible).

SULLIVAN, Justice, concurring in part and dissenting in part.

I concur with the majority's opinion in this case except as to Part IV from which I respectfully dissent. It seems clear to me that the judge here was "declaring himself for a lengthy sentence" in advance of receiving the pre-sentence investigation report required by Ind.Code § 35–38–1–8 (Supp.1997) and other pre-requisites to making the sentencing decision. As such, I believe the requirements of Ind.Crim. Rule 12(B) for a change of judge have been met.