

FILED
Feb 08 2024, 9:55 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-OR-311

## State ex rel. Richard Allen,
*Relator,*

–v–

## Carroll Circuit Court and the Honorable
## Frances C. Gull, Special Judge,
*Respondents.*

Decided: February 8, 2024

Petition for Writ of Mandamus under
Indiana's Rules of Procedure for Original Actions

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa and Goff concur.

Justice Slaughter concurs in part and dissents in part with separate opinion.

**Molter, Justice.**

The State charged Richard Allen with two counts of murder. Because he couldn't afford an attorney, the trial court appointed public defenders Andrew Baldwin and Brad Rozzi to represent him. But after about a year, the special judge presiding over the case became concerned they were not representing Allen effectively. So she disqualified them over Allen's objection, replaced them with two new public defenders, and continued Allen's trial for at least nine months so that his new trial attorneys would have enough time to prepare.

Allen then retained two appellate attorneys who filed a Verified Petition for Writ of Mandamus in our Court requesting that we mandate: (1) Baldwin and Rozzi's reinstatement as court-appointed counsel; (2) that Allen's criminal trial begin within seventy days after we issue the writ; and (3) that a new special judge replace the current special judge. The special judge and the Attorney General both opposed the petition, and we held an oral argument. After considering all parties' excellent written and oral submissions, we granted Allen's request to reinstate Baldwin and Rozzi but denied his other two requests in a short order with this opinion to follow.

Here, we explain our reasons for those three decisions. In short, we reinstated Baldwin and Rozzi as Allen's court-appointed counsel because the trial court did not find that their disqualification was a necessary last resort after weighing the prejudice to Allen. We denied Allen's request for a trial within seventy days because he did not make that request in the trial court. And we denied Allen's request to replace the special judge because he did not overcome our presumption of impartiality by identifying facts showing clearly that the special judge is biased or prejudiced.

## Facts and Procedural History

In February 2017, two teenage girls—Abigail Williams and Liberty German—were killed in Delphi, Indiana. Five years later, in October 2022, Allen was arrested and charged with murdering them. The trial court judge transferred Allen to the Department of Correction for his safety

while he awaits trial, and then recused from the case. A special judge was then appointed, and because Allen couldn't afford an attorney, the judge appointed Baldwin and Rozzi to represent him at public expense.

But a year later, the special judge lost faith in their ability to assist Allen with his defense effectively, so she ultimately disqualified them as counsel. A leak of confidential case materials, including crime scene photos, triggered the disqualification. Baldwin and Rozzi represent that in August 2023, one of Baldwin's friends and former employees—Mitchell Westerman—visited Baldwin's office, secretly copied discovery materials, including crime scene photos, and distributed them to others. After discovering the leak, Baldwin and Rozzi notified the special judge and the prosecutor on October 6. They also explain that after Westerman told Baldwin on October 9 what he had done, Baldwin and Rozzi relayed that information to the prosecutor the next day.

Two days later, the prosecutor emailed defense counsel and the special judge informing them that the individual to whom Westerman allegedly provided the materials committed suicide hours after refusing to answer questions from an Indiana State Police detective investigating the leak. The special judge responded to the email by expressing that she was "deeply concerned that Mr. Allen's defense is being compromised by all these recent events." R. Vol. 1 at 223. She then directed defense counsel to stop working on the case until the judge could discuss the recent developments with the parties during an October 19 hearing. In the meantime, Allen wrote a letter to the special judge informing her that he had discussed the leak with Rozzi and the impact it could have on his defense, but that he wanted Baldwin and Rozzi to continue representing him.

Counsel for both sides met with the special judge in her chambers just before the October 19 hearing to discuss the court's expectations for the hearing. During that meeting, the special judge informed Baldwin and Rozzi that they had demonstrated "gross negligence and incompetence" and conveyed she had grave concerns about their representation of Allen. Suppl. R. at 15. In support, the special judge said the attorneys failed to safeguard confidential case materials, including crime scene photos; emailed confidential work product to an unauthorized person and failed

to timely report the leak; made extrajudicial statements about the case; and included inaccurate statements in various pleadings. Based on these concerns, the court informed counsel that she had decided to disqualify Baldwin and Rozzi. But she offered to let them save face by withdrawing from the case so that she wouldn't have to go into a public hearing a few minutes later and read a statement she had prepared explaining why she believed counsel was grossly negligent and ineffective. Allen wasn't present for this discussion, but after briefly speaking with Baldwin and Rozzi, he relayed through them his objection to the court's disqualification.

Since the court presented to Baldwin and Rozzi what seemed like a Hobson's choice—withdraw or be disqualified in a publicly humiliating fashion—they conveyed they would withdraw over Allen's objection to the court's disqualification decision. The special judge accepted their withdrawals and conducted a brief public hearing without them, where she stated merely that there was an "unexpected turn of events" and defense counsel had withdrawn from the case. R. Vol. 2 at 6.

But after having a few days to reconsider and discuss it further with Allen, defense counsel changed their minds, and neither Baldwin nor Rozzi ever filed a written motion to withdraw as required by Trial Rule 3.1(H). Instead, Rozzi filed a Verified Notice of Continuing Representation, notifying the court that he, in fact, would not be moving to withdraw and would continue representing Allen. And he filed a Motion to Disqualify on Allen's behalf, arguing the special judge was biased and should recuse herself. The trial court struck both filings and ordered the clerk to remove them from the record because Rozzi was no longer counsel of record. She also appointed two new public defenders to represent Allen.

Baldwin then filed a Motion to Reconsider, also informing the court that he would not file a written motion to withdraw, he did not consider his oral withdrawal effective, and he would continue representing Allen. And Baldwin and Rozzi both entered new appearances as Allen's privately retained pro bono counsel. But, after a hearing on October 31, the court entered an order stating that the special judge "previously found gross negligence by [Baldwin and Rozzi] in their representation of the

defendant," and "[n]othing has changed in the intervening twelve (12) days that removes the Court's grave concerns about their representation." R. Vol. 1 at 38. So, over their "strenuous objections," the court "disqualifie[d] them from representing the defendant and affirm[ed] the appointment" of new public defenders. *Id.* The court also continued the January 8, 2024 trial date to October 15, 2024.

On November 6, 2023, Allen petitioned this Court for a writ of mandamus by original action and asked us to: (1) order the trial court to reinstate Baldwin and Rozzi as court-appointed counsel; (2) order Allen's trial to begin within seventy days after the writ is issued; and (3) replace the special judge. We heard oral argument on January 18, 2024, and we issued a writ later that day granting Allen's first request but denying his other two.

# Discussion

As we explain below, we agree with Allen that he is entitled to have his original court-appointed attorneys reinstated. But we agree with the State and the special judge that Allen is not entitled to a writ ordering a trial to begin within seventy days or replacing the special judge.

## I.    Allen's request to reinstate his original court-appointed counsel presents extraordinary circumstances warranting relief.

Allen argues the trial court exceeded its authority by disqualifying his original court-appointed counsel because disqualification was unwarranted and significantly prejudices both his defense and his opportunity for a speedy trial. The State and the special judge respond that this original action is not the proper procedural vehicle to evaluate Allen's claim, and even if it was, the special judge was within her authority to disqualify counsel because she was rightly concerned that they were not fulfilling Allen's constitutional right to effective legal assistance.

We agree with Allen. Our Court has repeatedly reviewed attorney disqualification issues through original actions, and we do so here because Allen's petition presents the sort of extraordinary circumstances for which there is not an adequate appellate remedy that our Original Action Rules require.

### A. We may review an attorney disqualification decision through an original action.

This Court has exclusive, original jurisdiction to supervise the exercise of jurisdiction by all Indiana courts. Ind. Const. art. 7, § 4; Ind. Original Action Rule 1(A). We exercise our supervisory authority through original actions for writs of mandamus or prohibition. Orig. Act. R. 1(B). Each writ "is an extraordinary remedy, equitable in nature and viewed with disfavor." *State ex rel. Commons v. Pera*, 987 N.E.2d 1074, 1076 (Ind. 2013). A writ "will not be issued unless the relator can show a clear and obvious emergency where the failure of this Court to act will result in substantial injustice." *Id.* It will also "be issued only where the trial court has an absolute duty to act or refrain from acting." *Id.* And original actions "may not be used as substitutes for appeal." Orig. Act. R. 1(C).

One issue our Court has repeatedly reviewed through original actions is whether to disqualify counsel. *State ex rel. Kirtz v. Delaware Cir. Ct. No. 5*, 916 N.E.2d 658, 661–62 (Ind. 2009) (issuing a writ to disqualify a special prosecutor because the prosecutor's relationship with an attorney against whom the defendant had recently testified created an appearance of impropriety); *State ex rel. Jones v. Knox Super. Ct. No. 1*, 728 N.E.2d 133, 134 (Ind. 2000) (declining to issue a writ to reinstate court-appointed counsel the trial court disqualified for their "insulting and absolutely improper" comments because the attorneys had "affirmatively requested that they be allowed to withdraw" if the trial court denied their request for a continuance (quotations omitted)); *State ex rel. Meyers v. Tippecanoe Cnty. Ct.*, 432 N.E.2d 1377, 1379 (Ind. 1982) (declining to issue a writ requiring the trial court to withdraw its order disqualifying the elected prosecutor, where the elected prosecutor was a defense attorney for the accused in two prior cases); *State ex rel. Sendak v. Marion Cnty. Super. Ct., Room No. 2*,

268 Ind. 3, 6, 373 N.E.2d 145, 147–48 (Ind. 1978) (issuing a writ to remove private counsel retained for a state agency in violation of a statute).

As in those prior cases, reviewing the trial court's disqualification decision here is appropriate through an original action. That is because this case presents extraordinary circumstances where denying a writ will result in substantial injustice, and Allen's petition is not a substitute for an adequate appellate remedy. We reach that conclusion for a few related reasons.

For starters, disqualifying Allen's counsel delayed his trial by at least nine months, and the trial court has already concluded that Allen's pretrial confinement presents extraordinary challenges. Normally, criminal defendants who must be confined while they await trial are detained in the county jail with other defendants who are awaiting trial or who have been convicted and received shorter sentences. But here, for Allen's safety, the original judge transferred Allen to the Department of Correction, which runs our state's prisons—facilities that generally detain inmates only after they are convicted and serving longer sentences for more serious crimes. The special judge later reconsidered the original judge's transfer order, and she too found it "reasonable and necessary to ensure the defendant's safety and to prevent serious bodily injury." R. Vol. 1 at 26.

Allen is being held at the Wabash Valley Correctional Facility, which is hours from Carroll County, where the charges were filed, and Allen County, where the special judge serves. Allen's original public defenders and his substitute public defenders have all challenged the conditions of his pretrial confinement, including as they relate to preparing his defense. We are in no position to evaluate the claims in those motions, and the special judge has concluded at least some of Baldwin and Rozzi's claims about the confinement conditions are wrong. But even assuming every aspect of Allen's pretrial confinement is proper (and again, we are in no position to say one way or another at this point), extending it for at least nine months still presents extraordinary challenges for which there is no adequate appellate remedy.

What's more, as we explain in greater detail below, we've concluded the trial court lacked the authority to remove counsel without (1) considering other, less drastic options and (2) weighing the prejudice to Allen. So not only would Allen's trial be delayed for at least many months if his original attorneys were not reinstated, if Allen were convicted, correcting the disqualification by vacating his conviction and ordering a second trial would produce years of further delay and an enormous waste of time and resources. That would not serve anyone's interests—not Allen's, the State's, the victims' families', the courts', nor the public's.

Of course, these concerns can generally be resolved through discretionary interlocutory appeals. *See* Ind. Appellate Rule 14(B)(1)(c) (including as bases for a discretionary interlocutory appeal that the "appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination of the error is withheld until after judgment"; or the "order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case"). And both the State and the special judge argue that is the procedural route Allen should have pursued instead. But Allen effectively couldn't, which is another reason this matter is extraordinary.

On top of disqualifying counsel, the special judge struck their later filings because they were no longer counsel of record. Without the ability to file a motion requesting the special judge to certify her order for interlocutory review, Allen's attorneys couldn't pursue that avenue. App. R. 14(B) (requiring trial court certification to pursue a discretionary interlocutory appeal).

To that point, the State and the special judge respond that Allen should have had either his new public defenders or the appellate attorneys he retained for this original action pursue an interlocutory appeal instead. But it isn't clear how either option was feasible. The newly appointed trial counsel had nothing to do with the disqualification proceedings, and Allen wasn't present for them, so it is not obvious how Allen could work with his new trial attorneys to pursue an interlocutory appeal in the trial court. Maybe Allen's privately retained appellate attorneys could have done so, but it is unclear whether the trial judge would permit them to represent Allen in the trial court along with his new substitute court-

appointed counsel. And it is unclear how it would work if substitute, court-appointed trial counsel disagreed with the privately retained appellate counsel about whether to seek certification in the trial court.

We simply don't expect Allen to untie that procedural knot, and he can cut through it with this original action instead. Our prior precedents pointed appellate counsel to the original action tool, and we decline to retire that tool for these sorts of situations now.

Having concluded that Allen's petition is properly before us, we turn to its merits.

## B. Allen is entitled to the reinstatement of his original court-appointed counsel.

### 1. Court-appointed counsel may be disqualified only as a last resort after considering the prejudice to the defendant.

The Sixth Amendment to the U.S. Constitution (applicable to Indiana through the Fourteenth Amendment's Due Process Clause, *Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S. Ct. 792, L. Ed. 2d. 799 (1963)), and Article 1, Section 13 of our Indiana Constitution, guarantee criminal defendants the right to have an attorney assist them with their defense. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Ind. Const. art. 1, § 13 ("In all criminal prosecutions, the accused shall have the right . . . to be heard by himself and counsel . . . ."). For defendants who can afford to hire an attorney or retain an attorney to represent them for free, that constitutional guarantee includes the right to choose which attorney will represent them. *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d. 409 (2006). And the erroneous deprivation of this right constitutes structural error, which, unlike other errors, entitles criminal defendants who are convicted to automatic reversal and a new trial. *Id.* at 150–51. But the right to counsel of

choice does not extend to criminal defendants who can't afford an attorney and can't find one to represent them for free. *Id.* at 144, 151.

Allen can't afford an attorney, and he has asked us to reinstate Baldwin and Rozzi as his court-appointed counsel. Consequently, he has no constitutional right to choose which attorneys will represent him. But he didn't choose Baldwin and Rozzi; the trial court did. Allen just wants to continue with the attorneys the trial court chose for him—he is insisting on the *continuity* of counsel rather than his *choice* of counsel.

Courts around the country are divided over whether the Sixth Amendment guarantees criminal defendants the continuity of court-appointed counsel. *Compare, e.g.*, *United States v. Parker*, 469 F.3d 57, 61 (2d Cir. 2006) ("There is no constitutional right to continuity of appointed counsel."), *with, e.g.*, *State v. McKinley*, 860 N.W.2d 874, 880 (Iowa 2015) ("Once established, the interest in maintaining a relationship of trust with counsel is of no less importance to an indigent client than to one with ample resources to hire counsel."). Our Court has been "generally of the view that a trial court is limited in its authority to remove a criminal defendant's court-appointed counsel." *State ex rel. Jones*, 728 N.E.2d at 134. And even courts that have concluded there is no Sixth Amendment right to the continuity of court-appointed counsel have agreed with that much.

For example, though the Colorado Supreme Court recently held there is no Sixth Amendment right to the continuity of court-appointed counsel, it still acknowledged that "a defendant's interest in continued representation by a lawyer they have been working with is entitled to great weight . . . if they can demonstrate that prejudice would result from substitution with a different court-appointed attorney." *People v. Rainey*, 527 P.3d 387, 394 (Colo. 2023) (quotations omitted). The court concluded that interest flows from the due process guarantees in the Fifth and Fourteenth Amendments to the U.S. Constitution rather than the Sixth Amendment's right to counsel. *Id.* at 396–97. And while the U.S. Supreme Court has not yet addressed whether there is a Sixth Amendment right to the continuity of court-appointed counsel, it too has recognized that the rights to due process and counsel overlap. *See Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the

basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . .").

The Colorado Supreme Court also recognized that before disqualifying court-appointed counsel, "the court must determine that any remedy short of disqualification would be ineffective." *Rainey*, 527 P.3d at 395 (quotations omitted). In other words, disqualifying court-appointed counsel is a drastic remedy that should only be a last resort. *See In re Ellis*, 822 S.W.2d 602, 605 (Tenn. Ct. App. 1991) ("Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists."); *cf. United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009) ("Thus, disqualification of defense counsel should be a measure of last resort, and the government bears a heavy burden of establishing that disqualification is justified." (quotations omitted)). And this approach aligns with how we have treated other drastic litigation remedies that are in tension with parties' due process rights. *See State v. Lyons*, 211 N.E.3d 500, 506 (Ind. 2023) ("Courts exclude evidence only as a last resort because that remedy frustrates a trial's truth-seeking function."); *Canaan v. State*, 541 N.E.2d 894, 908 (Ind. 1989) ("The trial court has broad discretion in determining whether to declare a mistrial, and ordinarily the prerogative to declare one will be exercised only as a last resort.").

While the State defends the disqualification decision here, it appropriately acknowledges that a trial court's discretion to disqualify court-appointed counsel is significantly limited. The State's brief accurately explains that while "varied interests may necessitate overriding a defendant's preference, disqualification is an extreme remedy that should only be used 'when a court deems it reasonably necessary to ensure the integrity of the fact-finding process, the fairness or appearance of fairness at trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system.'" Att'y General's Resp. at 15 (quoting *Rainey*, 527 P.3d at 394 (cleaned up)).

So whether as a product of a defendant's right to due process or the right to counsel, the bottom line is this: a trial court cannot disqualify court-appointed counsel over the objection of both the defendant and appointed counsel unless (a) disqualification is a last resort; (b)

disqualification is necessary to protect the defendant's constitutional rights, to ensure the proceedings are conducted fairly and within our profession's ethical standards, or to ensure the orderly and efficient administration of justice; and (c) those interests outweigh the prejudice to the defendant.

In a previous original action, we said a trial court is "limited in its authority to remove a criminal defendant's court-appointed counsel," but we went on to say it was "unnecessary to explicate the parameters of that authority." *State ex rel. Jones*, 728 N.E.2d at 134. While an original action is not the appropriate vehicle through which to adjudicate or establish a right or to define and impose a duty, *State ex rel. Fadell v. Porter Super. Ct.*, 475 N.E.2d 310, 312 (Ind. 1985), here we do find it necessary to explain the parameters of the previously established limitations on the trial court's authority. The framework we describe here mirrors how our Court has treated other drastic remedies that may conflict with parties' due process rights. And our concern that disqualifying counsel introduced structural error—at least as it relates to disqualifying them as privately-retained pro bono counsel—presents further extraordinary circumstances that prompt us to exercise our jurisdiction now to preserve the integrity of the trial proceedings going forward.

### 2. Disqualification here was not a last resort.

The special judge concluded Baldwin and Rozzi made four mistakes that demonstrated they may be unable to assist Allen with his defense effectively: (1) they failed to secure confidential case materials, including crime scene photos; (2) Baldwin misdirected an email (he says inadvertently) with confidential case materials to a non-party client without timely reporting the mistake to the trial court or prosecutor; (3) Baldwin and Rozzi made extrajudicial statements while the prosecutor's motion for a gag order was pending which the special judge thought might prejudice the case; and (4) statements in Baldwin and Rozzi's Motion to Reconsider Safekeeping Order turned out to be wrong. Respondent's Br. at 12–15. But the record does not reflect the special judge disqualified counsel only as a last resort after balancing her effective-

assistance-of-counsel concerns against the prejudice to Allen that would result from substituting counsel.

First, the record does not reflect that disqualifying counsel was a last resort. Each of the special judge's four concerns could be addressed through a combination of procedural rules and court orders, including the gag order and protective order she entered. And trial courts maintain both statutory and inherent authority to compel compliance with their orders and the procedural rules through contempt proceedings and sanctions that include fines and even jail. *Reynolds v. Reynolds*, 64 N.E.3d 829, 833, 835 (Ind. 2016); *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994); *McQueen v. State*, 272 Ind. 229, 231, 396 N.E.2d 903, 904 (1979) (recognizing that "a trial judge can protect [the] court against insult and gross violations of decorum by the infliction of summary punishment by fine, imprisonment or both via a contempt citation"); Ind. Code §§ 34-47-2-1 to -4-3 (contempt statutes). Indeed, the trial court's protective order invoked the court's contempt power to enforce compliance. R. Vol. 1 at 51 (ordering that the parties cannot grant anyone access to discovery materials without the court's permission and without the person seeking access first signing an agreement subjecting them "to the Court's contempt powers"). There was no finding that these tools were inadequate to resolve the special judge's concerns.

Second, the only basis for disqualifying counsel was the special judge's concern that they could not assist Allen with his defense effectively. Respondent's Br. at 10–15. To be sure, the Sixth Amendment's right to effective counsel "imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." *Gonzalez-Lopez*, 548 U.S. at 148. But there is no suggestion that Baldwin and Rozzi are out of their depth. Baldwin has over thirty years of experience representing thousands of clients around the state—including clients charged with murder, rape, robbery, burglary, and other violent offenses—and he has tried more than 125 jury trials. Rozzi has over twenty years of the same experience, including three murder trials and a previous certification to handle death penalty cases.

Moreover, neither the State nor the special judge argue that counsel's extrajudicial statements or the statements in their motion harmed Allen's

defense. They do argue the disclosure of case materials undermines Allen's defense, but they don't explain how. And they don't argue these mistakes reflect that Baldwin and Rozzi are incompetent to handle Allen's defense or explain why disqualification is *necessary* to protect Allen's right to the effective assistance of counsel. Notably, neither the State nor the special judge direct us to any case concluding that issues like these—either in isolation or combination—rendered counsel constitutionally ineffective or were sufficient to warrant disqualification.

Third, there is no showing that the special judge's concerns outweighed the substantial prejudice to Allen from substituting counsel. Baldwin and Rozzi spent a year working with Allen, investigators, and experts developing Allen's defense, and Allen says he is ready to present it to a jury. The prejudice to Allen begins with the fact that information and momentum spillage is inevitable as one trial team hands a complicated case like this over to another. Add to that, Allen has already been in jail for about a year and a half now, and substituting counsel requires a nine-month delay in the trial date with substitute counsel unsure whether they would even be ready by then. That is not surprising given that this is a complicated, high-stakes case. Further, it has already been seven years since the murders. And fact-finding only gets harder as time passes, memories fade, and evidence is lost. *Matter of Peoples*, 614 N.E.2d 555, 557 (Ind. 1993) ("Our disciplinary rules recognize that with the passage of time, clients risk the loss of rights, witnesses' memories fade, and evidence may disappear."). The record does not reveal any weighing of these concerns.

Because the record does not reflect disqualification was a last resort that was necessary after balancing the trial court's concerns against the prejudice to Allen, Baldwin and Rozzi must be reinstated.

## II. Allen's remaining requests present no extraordinary circumstances warranting relief.

Allen's second request is that we mandate that the trial court order Allen's trial to commence within seventy days. Allen and his attorneys prepared and signed a speedy trial motion, but they never filed it with the

trial court. Until a trial court has refused to rule properly, there is no basis for relief in this Court. Orig. Act. R. 3(A)(4); *State ex rel. Wonderly v. Allen Cir. Ct.*, 274 Ind. 572, 574–75, 412 N.E.2d 1209, 1211 (1980). We therefore deny Allen's request to order that his trial begin within seventy days, although his attorneys remain free to make such a request in the trial court if Allen wishes.

Allen's third request is that we appoint a new special judge to avoid the appearance that the trial court is biased against the defense. But Allen has not stated facts showing clearly that the special judge's disqualification is required. We begin with the presumption that a trial judge is unbiased. *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). To overcome that presumption, the party seeking disqualification must identify facts reflecting the judge's actual bias or prejudice. *Id.* Our law is well settled that "[p]rejudice is not inferred from adverse judicial rulings." *Zavodnik v. Harper*, 17 N.E.3d 259, 269 (Ind. 2014). And that is all Allen identifies here—the special judge's adverse ruling disqualifying counsel.

No doubt, that adverse ruling was significant. But nothing in the record suggests the special judge's decision emerged from bias or prejudice against Allen. Just the opposite, the special judge explained she disqualified counsel because she was trying to protect Allen's right to the effective assistance of counsel. And we don't minimize her concern; she faced a significant dilemma given her conclusion that defense counsel were no longer effective. If she left counsel in place and Allen was convicted, the conviction might have been vacated through post-conviction proceedings based on ineffective assistance of counsel. Or if she disqualified counsel and Allen was convicted, then the conviction might have been vacated because she infringed on Allen's right to the continuity or choice of counsel. She was in a tough spot either way.

Though we've determined the record does not support her disqualification decision, we reach that conclusion with the benefit of weeks to consider the issue; thorough briefing and oral argument from excellent appellate attorneys; and the benefit of five justices and their staffs poring over the record, authorities, and arguments. The special judge did not have those luxuries.

Nor does Allen point to anything suggesting the special judge is biased against Baldwin and Rozzi. Of course, she said their mistakes reflected "gross negligence," and she was concerned their representation was ineffective. Suppl. R. at 15. But "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Noble v. State*, 725 N.E.2d 842, 848 (Ind. 2000) (cleaned up). That is, unless "they reveal an opinion that derives from an extrajudicial source" or "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (quotations omitted).

The special judge said counsel made mistakes that rendered their representation ineffective, but her statements were not based on any extrajudicial source or any experience outside this case. Instead, her statements were based entirely on her observations within this case. And while her conclusion that counsel were constitutionally ineffective was too harsh, she wasn't wrong to be deeply concerned that sensitive case materials had leaked.

Though she mistakenly hit defense counsel's eject button instead of the case's lockdown button, she was right to try to get the situation under control quickly and decisively. Her efforts did not reflect any bias or prejudice, and Allen doesn't identify anything she has done that demonstrates she isn't impartial. We therefore deny Allen's request to replace the special judge.

## Conclusion

Having granted Allen's request to reinstate his original court-appointed counsel and denied his remaining requests through our January 18, 2024 order, this opinion terminates the original action proceedings in this Court. Petitions for rehearing or motions to reconsider are not allowed. Orig. Act. R. 5(C).

Rush, C.J., and Massa and Goff, JJ., concur.
Slaughter, J., concurs in part and dissents in part with separate opinion.

ATTORNEYS FOR RELATOR

Mark Leeman
Leeman Law Office
Logansport, Indiana

Cara Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR RESPONDENT

Matthew Gutwein
Christopher Stake
Delaney and Delaney
Indianapolis, Indiana

ATTORNEYS FOR STATE OF INDIANA

Theodore E. Rokita
Attorney General of Indiana

Angela Sanchez, Chief Counsel of Appeals
Andrew Kobe, Section Chief, Criminal Appeals
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA PUBLIC DEFENDER COUNCIL

Bernice Corley, Executive Director
Indianapolis, Indiana

Joel Schumm
Indianapolis, Indiana

**Slaughter, J., concurring in part and dissenting in part.**

Relator, Richard Allen, fails to meet the demanding threshold for obtaining the extraordinary relief he seeks. He establishes neither that Respondents breached a clear legal duty entitling him to an unquestioned right to relief nor that an ordinary appeal would provide an inadequate remedy. Thus, I concur with Part II of the Court's opinion, *ante*, at 14–16, which denies Allen's requests that we replace Special Judge Frances C. Gull and order a trial within seventy days. But I respectfully dissent from Part I, which orders the reinstatement of Allen's court-appointed counsel, Andrew Baldwin and Bradley Rozzi.

My objection has less to do with the Court's legal analysis than with its bottom-line issuance of a writ, given the procedural posture in which the issue of attorney disqualification comes to us. Had this issue arisen in an interlocutory appeal or after a final judgment, I would be more open to Allen's argument that the trial court erred in threatening to disqualify his trial counsel after finding them grossly negligent and incompetent. But that is not the posture of this case. By seeking relief through the vehicle of an original action, Allen takes on the onerous burden of satisfying its exacting requirements.

Original actions are "viewed with disfavor" and cannot serve as "substitutes for appeals." Ind. Original Action Rule 1(C). We do not issue writs to establish rights or define duties. A writ is warranted "only to force an official to perform a clear legal duty or to grant an unquestioned right to relief." *State ex rel. Fadell v. Porter Super. Ct.*, 475 N.E.2d 310, 312 (Ind. 1985). A writ will issue, in other words, "only where the trial court has an absolute duty to act or refrain from acting." *State ex rel. Commons v. Pera*, 987 N.E.2d 1074, 1076 (Ind. 2013). And we will not intervene if an appeal will afford an adequate remedy. Orig. Act. R. 3(A)(6). The regular appellate process must be "wholly inadequate" to compel us to action. *Ibid.* Allen falls short in both respects.

A

First, the trial judge did not violate an absolute duty in dismissing court-appointed counsel because Allen does not have an unquestioned

right to keep them. The Sixth Amendment protects Allen's right to effective counsel, *Wheat v. United States*, 486 U.S. 153, 159 (1988), which includes his choice of qualified counsel, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). The right to counsel of one's choice, though, is not absolute but is "circumscribed in several important respects." *Wheat*, 486 U.S. at 159. Trial courts have "wide latitude" to balance this right against competing interests like fairness, our profession's ethical standards, and the court's scheduling needs. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). The "essential aim", after all, is to "guarantee an effective advocate for each criminal defendant" and not "to ensure that the defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. While the trial judge's actions raise a **potential** constitutional problem, under current law it is far from clear she exceeded her authority.

The Court's opinion tacitly admits as much. To justify its award of relief, the Court must fashion a new rule against which to adjudge the trial court's actions below.

> [A] trial court cannot disqualify court-appointed counsel over the objection of both the defendant and appointed counsel unless (a) disqualification is a last resort; (b) disqualification is necessary to protect the defendant's constitutional rights, to ensure the proceedings are conducted fairly and within our profession's ethical standards, or to ensure the orderly and efficient administration of justice; and (c) those interests outweigh the prejudice to the defendant.

*Ante*, at 11–12. And then, having announced its new rule, the Court proceeds to find the trial judge breached it.

The problem is that this rule did not exist previously. The opinion cites nothing from our Court—or any court—establishing this rule. Yet despite being unable to identify the source of the rule imposing the supposedly clear legal duty, the Court awards extraordinary relief anyway. The Court is not even sure of the rule's constitutional source—be it the "defendant's right to due process or the right to counsel". *Ante*, at 11. The existence of

such a duty is anything but "clear" if the Court must patch together its rule out of "whole cloth" to justify today's result.

On the merits, I do not necessarily quarrel with the rule the Court announces today. It appears to strike a reasonable balance between the competing interests of a criminal defendant's right to counsel and a judge's duty to ensure the defendant receives a fair trial. My beef, rather, is with our after-the-fact application of this newly minted rule to award mandamus relief against Judge Gull, who did not have the benefit of our rule when she acted.

For this reason alone, I cannot join Part I. Our original-action rules do not permit issuing a writ when the trial judge's duties are unclear, or the law is unsettled. *State ex rel. Fadell*, 475 N.E.2d at 312. Original actions are for clear-cut cases that apply settled law, not for cases like today's that announce new legal rules. The latter is what appeals are for.

B

Second, Allen does not make the case that an appellate remedy would be inadequate. This case could—and thus should—have been brought as an ordinary appeal. Instead, by issuing a writ, we ratify Allen's improper request for a "short-cut to an appeal on the merits." *State ex rel. Durham v. Marion Cir. Ct.*, 162 N.E.2d 505, 508 (Ind. 1959). Allen could have sought a discretionary interlocutory appeal under Appellate Rule 14(B) when the trial judge dismissed his counsel and barred them from entering a pro bono appearance. There is no reason to presume Allen's original-action counsel could not have pursued such an appeal on his behalf. And had Judge Gull refused the request and Allen been convicted, he would have had the ultimate appellate remedy: automatic reversal of any convictions based on his claim that the judge's disqualification of counsel amounted to structural error. *Gonzalez-Lopez*, 548 U.S. at 150. Either appellate remedy—on interlocutory review or after final judgment—would have provided Allen all the relief to which he was entitled.

C

Finally, the Court rationalizes its writ by claiming we have "repeatedly reviewed" attorney-disqualification issues in original actions. *Ante*, at 6. In

fact, our case law does not bear out a pattern of issuing writs in disqualification disputes. Of the many cases the Court cites, we issued a writ in only two. In one of those, we disqualified a special prosecutor whose appointment violated a statute forbidding the appearance of impropriety. *State ex rel. Kirtz v. Delaware Cir. Ct. No. 5*, 916 N.E.2d 658, 661–62 (Ind. 2009). In the other, we disqualified an attorney whom a state agency hired in violation of a statute requiring the attorney general to represent the agency. *State ex rel. Sendak v. Marion Cnty. Super. Ct., Room No. 2*, 373 N.E.2d 145, 147–48 (Ind. 1978). Unlike here, both cases involved the violation of a clear legal right or duty—and, but for the writ, counsel's continued representation would have exceeded statutory authority.

*       *       *

The Court today flouts our original-action rules to award extraordinary mandamus relief in favor of Allen and against the trial judge. In doing so, we allow Allen to short circuit the appellate process, muddy our own jurisprudence in this important area, and invite future deviations from our rules. In my view, these institutional costs far outweigh the benefits to Allen.

For these reasons, I respectfully dissent from Part I of the Court's opinion and concur with Part II.